IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE OSB ANTITRUST LITIGATION    :
                                  :
                                  :        **Master File No. 06-826**
                                  :
THIS DOCUMENT RELATES TO:         :
DIRECT PURCHASER ACTIONS          :
                                  :

---

**Diamond, J.**                                              **January 14, 2009**

## MEMORANDUM

In this antitrust class action, I decline to join as an involuntary plaintiff a Class Member

that obtained its claims by assignment and now seeks to opt out of this litigation.

## I.  BACKGROUND

In March 2006, direct purchasers of Oriented Strand Board (a wood product commonly

used in construction) brought suit, alleging a horizontal price-fixing conspiracy among nine

major OSB manufacturers in violation of the Sherman Antitrust Act.  See 15 U.S.C. § 1.  Over

the next two and a half years, I granted final approval to settlements between Plaintiffs and all

Defendants: Ainsworth Lumber Co., Ltd., Georgia-Pacific Corporation, Grant Forest Products,

Inc. and Grant Forest Products Sales, Inc., J.M. Huber Corporation, Louisiana-Pacific

Corporation, Norbord Industries, Inc., Potlatch Corporation, Tolko Industries, Inc., and

Weyerhauser Company.  (Doc. Nos. 503, 867, 868, 869, 940, 941, 942, 943, 944.)

**A.**      **The Initial Attempt to Opt Out with Respect to Assigned Claims**

In accordance with my scheduling orders, on May 7, 2008, Class Members Bailey

Lumber & Supply Company and Ed Price Building Materials (which Bailey has acquired), gave

notice that they would opt out of this litigation both as direct OSB purchasers and as the

assignees of claims from two cooperative buying organizations -- Lumbermens Merchandising

Corporation (for Bailey) and Guardian Building Products (for Price).  (Doc. No. 858 Ex. 1.)

Although it is undisputed that Bailey and Price may opt out as direct OSB purchasers,

Plaintiffs moved to preclude Bailey and Price from opting out as assignees, arguing that: (1) the

companies are indirect purchasers with respect to any assigned claims and so are without

standing to opt out of the Direct Purchaser Class; (2) allowing Bailey and Price to opt out would

make it difficult to apportion damages and create a risk of multiple recoveries against the same

Defendants; and (3) the proposed opt-out is invalid because Defendants have not consented to the

assignments in question.  (Doc. No. 858.)  All Defendants but Huber joined Plaintiffs' Motion.

(Doc. Nos. 859, 864.)

In opposing Plaintiffs' Motion, Bailey and Price provided no evidence confirming even

the existence of the assignments.  Accordingly, on August 28, 2008, I granted Plaintiffs' Motion

without prejudice to the right of Bailey and Price to renew their opt-out attempt with supporting

evidence.  (Doc. No. 881.)  On September 11, 2008, Bailey submitted an "Assignment of Claim"

document dated May 7, 2008 in which Lumbermens' President and CEO purports to assign to

Bailey some of Lumbermens' antitrust claims against seven of the Defendants.  (Doc. No. 888

Ex. A.)  The Parties do not dispute the document's authenticity or that Lumbermens in fact made

such an assignment to Bailey.  Although the assignment related only to those OSB purchases that

Lumbermens then resold to Bailey, the May 7, 2008 document did not indicate the dollar value of

the purchases.

Price has not submitted any evidence confirming that it received assigned claims from

Guardian or any other entity.  Counsel has now confirmed that Price has "abandoned" its attempt

to opt out with respect to assigned claims.  (Doc. No. 949 at 2.)  Accordingly, I will address only

Bailey's opt-out effort.

**B.    Continued Litigation Respecting Bailey's Assigned Claims**

I held a series of conferences in October and a hearing in November to determine if the

Parties could stipulate to the value of the OSB purchases Lumbermens assigned to Bailey.  See

Tr. Nov. 24, 2008 at 3-8.  On December 4, 2008, the Parties submitted a "Stipulation Regarding

the Value of the Claims Assigned by Lumbermens Merchandising Corporation to Bailey Lumber

& Supply Company," which provided that the assigned OSB purchases totalled $4,454,127.

(Doc. No. 936.)

On November 12, 2008, Bailey filed a federal antitrust action in Mississippi against

Georgia-Pacific, BlueLinx Corporation, and Weyerhaeuser, and added Louisiana-Pacific as a

defendant on November 26, 2008.  (S.D. Miss. Civil Action No. 08-1394.)  Bailey has brought

the action both as a direct purchaser of OSB and as assignee of the Lumbermens purchases.  (Id.

Doc. No. 13.)

Although the Parties have stipulated to the value of Lumbermens' assignments to Bailey,

Plaintiffs and Defendants vigorously contend that as an assignee, Bailey does not have standing

to opt out of the instant case, and that allowing the opt-out would prejudice them.  Accordingly,

Plaintiffs and Defendants urge me to join Bailey as an involuntary plaintiff here.

## II.  DISCUSSION

**A.    Bailey's Standing as an Assignee**

The Supreme Court has long held that indirect purchasers do not have standing to sue for

damages under federal antitrust laws because their injury is too remote.  See Illinois Brick Co. v.

Illinois, 431 U.S. 720 (1977).  The Third Circuit has explained, however, that "express

assignments of antitrust claims from a direct purchaser to an indirect purchaser are permissible

and do not run afoul of Illinois Brick's standing requirements."  In re K-Dur Antitrust Litig., 338

F. Supp. 2d 517, 539 (D.N.J. 2004) (citing Gulfstream III Assoc., Inc. v. Gulfstream Aerospace

Corp., 995 F.2d 425, 438-39 (3d Cir. 1993).  Indeed, "[t]here is no serious doubt that an antitrust

claim can be expressly assigned."  Gulfstream, 995 F.2d at 437.

The Lumbermens May 7, 2008 document is clearly an express assignment of certain

antitrust claims.  Because Bailey thus seeks to proceed as an assignee (not an indirect purchaser),

it has standing to opt out of this litigation with respect to the claims it received from

Lumbermens.

**B.      Prejudice**

Plaintiffs and Defendants also argue that allowing Bailey to opt out and pursue separate

litigation would make it difficult to apportion damages between direct and indirect purchasers,

unnecessarily complicate this matter, and create a risk of multiple recoveries.  (Doc. No. 858 at

3-4.)  These were the concerns underlying the holding in Illinois Brick.  Illinois Brick Co. v.

Illinois, 431 U.S. 720, 730-31, 741-44 (1977); see In re Wyoming Tight Sands Antitrust Cases,

No. 85-2349, 1990 WL 155542, at *9 (D. Kan. Sept. 6, 1990).  None of these concerns is

implicated here.

As a buying organization, Lumbermens resold its OSB purchases to other companies,

including Bailey.  Because Lumbermens assigned all its antitrust claims respecting Bailey's

account to Bailey, and because the Parties have stipulated to the value of those claims, there is no

need to apportion damages between Lumbermens and Bailey.  Moreover, there is no risk of multiple recoveries because the Parties have agreed that Lumbermens will not seek compensation from the Settlement Fund for the claims it assigned to Bailey.  (Doc. No. 936 at 2.)  See Gulfstream, 995 F.2d at 440 ("[A]n express assignment . . . entirely eliminates any problems of split recoveries or duplicative liability.").

In these circumstances, the assignment to Bailey does not materially complicate the litigation.  Accordingly, Bailey's attempted opt-out with respect to its assigned claims does not implicate the concerns informing the Supreme Court's direct purchaser rule.  See In re Fine Paper Antitrust Litig., 632 F.2d 1081, 1090 (3d Cir. 1980) (the partial assignments at issue "pose no threat" to the Illinois Brick rule).

**C.      Joinder of Bailey as an Involuntary Plaintiff**

In their original Motion, Plaintiffs suggested almost in passing that because Defendants had not consented either to Bailey's proposed opt-out as an assignee or its pursuit of separate litigation with respect to the assigned claims, I was obligated to join Bailey involuntarily as a Class Member without opt-out rights.  (Doc. No. 858 at 4-5.)  Counsel for Weyerhaeuser has since reiterated this suggestion.  (Tr. Nov. 24, 2008 at 7-8.)  Pursuant to my Order, the Parties have now more fully briefed the involuntary joinder issue.  (Doc. Nos. 938, 949.)

Rule 19 sets out the criteria for determining whether an absent entity is necessary or indispensable to the appropriate resolution of litigation.  Fed. R. Civ. P. 19.  See, e.g., Huber v. Taylor, 532 F.3d 237, 247 (3d Cir. 2008).  The Rule thus provides in part as follows:

> Joinder by Court Order.  If a person has not been joined as required, the court must order that the person be made a party. *A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.*

Fed. R. Civ. P. 19(a)(2) (emphasis added).  See Sheldon v. West Bend Equip. Corp., 718 F.2d

603, 606 (3d Cir. 1983).

Involuntary joinder of plaintiffs is most commonly an issue in patent cases, where the

absent party has "an obligation to permit its name or title to be used to protect rights asserted in

the action."  Sheldon, 718 F.2d at 606.  See 7 Charles Alan Wright, Arthur R. Miller & Mary Kay

Kane, Federal Practice and Procedure § 1606 (3d ed. 2001) (the "most typical application [of

Rule 19's involuntary joinder provision] has been to allow exclusive licensees of patents and

copyrights to make the owner of the monopoly an involuntary plaintiff in infringement suits");

Murray v. Mississippi Farm Bureau Cas. Ins. Co., 251 F.R.D. 361, 364 (W.D. Wis. 2008) ("The

designation of a party as an involuntary plaintiff has generally been limited to cases involving

patent and copyright licensees.").  Accordingly, compelling Bailey to join this antitrust action

would be highly unusual.  Moreover, "[t]he law generally disfavors forced joinder of a party as a

plaintiff with whatever procedural handicaps that normally entails."  Eikel v. States Marine

Lines, Inc., 473 F.2d 959, 962 (5th Cir. 1973); see also South Dakota ex rel. South Dakota R.R.

Authority v. Burlington Northern & Santa Fe Railway Co., 280 F. Supp. 2d 919, 935 (D.S.D.

2003) (joinder of involuntary plaintiff is disfavored).

In asking me to order Bailey's joinder, Plaintiffs and Defendants have apparently ignored

this authority as well as Rule 19 itself.  Instead, they premise their joinder request entirely on a

brief passage from In re Fine Paper Antitrust Litigation.  632 F.2d 1081, 1090-92 (3d Cir. 1980).

I do not believe Fine Paper compels Bailey's joinder.

The Fine Paper Court considered whether the state of Washington as an assignee could

opt out of a direct purchaser settlement in a complex antitrust class action brought against paper

manufacturers. Like Bailey, Washington, in its capacity as assignee of direct purchaser claims,

sought to opt out of the class action and file a separate lawsuit against the defendants. Fine

Paper, 632 F.2d at 1089.

The district court held that Washington's attempt to opt out was untimely. In the

alternative, the court ruled that Washington could not base a separate action on the assigned

claims because doing so would impermissibly fragment the direct purchaser claims. Id. The

Third Circuit reversed -- holding that Washington's opt-out was timely -- and remanded for

consideration of whether the district court should involuntarily join Washington as a plaintiff. Id.

at 1090-92. In its analysis of the partial assignment of antitrust claims, the Court stressed that

> unless the obligor has consented, the partial assignee may not maintain the original
> suit against the obligor unless all parties having the collective right to the entire claim
> are joined in the proceeding. . . . Thus, partial assignments are recognized, but the
> rights of the obligor to be free of successive and repeated suits growing out of the
> same basic facts are also protected by the prudent use of joinder rules. If a suit is
> brought by either an assignor or partial assignee, the obligor has the option of
> requiring joinder of the necessary parties or resorting to interpleader.

Id. at 1091. Plaintiffs and Defendants argue that this language requires me to join Bailey as an

involuntary plaintiff because Defendants have not consented to Bailey opting out of the instant

case. I do not agree. The gravamen of Fine Paper is that in the absence of the defendants'

consent, Washington, as assignee, could not bring a separate, legally viable antitrust action

against those same defendants. That holding is consistent with well-settled authority:

> If the obligor has not contracted to perform separately the assigned part of a right, no
> legal proceeding can be maintained by the assignor or assignee against the obligor
> over his objection, unless all the persons entitled to the promised performance are
> joined in the proceeding, or unless joinder is not feasible and it is equitable to
> proceed without joinder.

Restatement (Second) of Contracts § 326(2) (1981).

Fine Paper and the Restatement thus strongly suggest that the assigned claims Bailey has brought in Mississippi are not viable because Bailey brought them without Defendants' consent.  Neither Fine Paper nor the Restatement requires Bailey's involuntary joinder in the instant case, however.  The Parties concede that Bailey may opt out and pursue separate litigation in Mississippi as a direct OSB purchaser.  Defendants must thus defend against separate litigation regardless of whether Bailey is permitted to include its assigned claims in that litigation.  Because the Parties stipulated to the value of the assigned claims, there is no possibility of confusion or multiple recoveries.  Because the Parties agree that only Bailey received an assignment of antitrust claims from Lumbermens, there is no possibility of Defendants suffering an onslaught of OSB litigation relating to other claims assigned by Lumbermens.  (Doc. No. 938 at 3.)

Finally, in making their involuntary joinder request, the Parties have apparently ignored that the other direct OSB purchasers that have properly opted out are free to bring their own antitrust claims against Defendants.  Thus, the harms the Parties seek to avert may well accrue even if I disallow Bailey's opt-out and compel joinder.  In these circumstances, "prudent use of joinder rules" weighs strongly *against* forcing Bailey to participate as a plaintiff in the instant case.  Fine Paper, 632 F.2d at 1091.

### III.  CONCLUSION

Bailey may opt out of this class action both as a direct OSB purchaser and as an assignee of antitrust claims from Lumbermens.  Joinder of Bailey as a Class Member without opt-out rights is not required by Fine Paper or Rule 19.  Because Price did not

submit evidence of any claim assignments and has abandoned its attempt to opt out of the

Class, Price may not opt out as an assignee.

An appropriate Order follows.

BY THE COURT:

/s/ Paul S. Diamond

_____

**Paul S. Diamond, J.**