IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE OSB ANTITRUST LITIGATION : | |
| : | |
| : | Master File No. 06-826 |
| THIS DOCUMENT RELATES TO: : | |
| DIRECT PURCHASER ACTIONS : | |
| : | |

Diamond, J.                                                                                                                   March 4, 2009

**MEMORANDUM**

Plaintiffs' Counsel seek attorneys' fees in connection with settlements Defendants reached with entities that have opted out of this antitrust class action. I have already awarded over $37 million in fees to Plaintiffs' Counsel in this matter. Because I do not believe the relief sought is permissible or warranted, I will deny Counsel's Motion.

**I.   BACKGROUND**

In March 2006, direct purchasers of Oriented Strand Board (a wood product commonly used in construction) brought suit, alleging a horizontal price-fixing conspiracy among nine major OSB manufacturers in violation of the Sherman Antitrust Act. See 15 U.S.C. § 1. During the next two and a half years, I granted final approval to settlements totalling over $120 million between Plaintiffs and all Defendants: Ainsworth Lumber Co., Ltd., Georgia-Pacific Corporation, Grant Forest Products, Inc. and Grant Forest Products Sales, Inc., J.M. Huber Corporation, Louisiana-Pacific Corporation, Norbord Industries, Inc., Potlatch Corporation, Tolko Industries, Inc., and Weyerhaeuser Company. (Doc. Nos. 503, 867, 868, 869, 940, 941, 942, 943, 944.)

1

Several entities -- including The Home Depot USA, Inc., 84 Lumber Company, Bailey Lumber & Supply Company, and Ed Price Building Materials -- opted out of certain Settlement Classes and the Litigation Class. Pursuant to the settlement agreements with all but one Defendant, settlement monies were escrowed with respect to each opt-out. If an entity that opted out then pursued its own claims against a Defendant, 75% of the set-aside was refunded to that Defendant. The remaining 25% was made part of the settlement funds to be distributed to the Class and Plaintiffs' Counsel.

On December 9, 2008, I awarded Class Counsel $37,091,797 plus interest in attorney's fees -- one third the total settlement monies available to Direct Purchaser Class Members. (Doc. No. 947.) On February 9, 2009, I approved Counsel's proposed plan to distribute this fee award among the thirty-eight firms that represented Direct Purchaser Plaintiffs. (Doc. No. 987.)

On June 18, 2008, Class Counsel filed a "Motion for Entry of Order Ensuring Reimbursement and Compensation from Tag-Along Actions," which I denied as premature. (Doc. Nos. 806, 865.) On December 30, 2008, Lead and Co-Lead Counsel filed a "Motion for Entry of Order Awarding Attorneys' Fees to Direct Purchaser Plaintiffs' Counsel from Settlements with Opt-Outs." (Doc. No. 962.) Class Counsel here refer to the settlements that several Defendants have reached outside the instant litigation with opt-outs Home Depot, 84 Lumber, Bailey Lumber, and Ed Price Building Materials. See Doc. Nos. 962, 981. Class Counsel contend that these settlements are funded almost entirely from the monies held in the opt-out escrow accounts. Class Counsel seek as attorneys' fees one third of the escrowed funds that were paid to these opt-outs. Home Depot, 84 Lumber, and Bailey Lumber argue that I am without jurisdiction to grant Counsel's request. (Doc. Nos. 964, 966, 972.)

## II.  DISCUSSION

I agree that I do not have jurisdiction to order the opt-outs to pay from the settlement monies they have already received the fees sought by Class Counsel.  To the extent that I have jurisdiction over any funds that have not yet been disbursed to the opt-outs, I conclude that distribution of these monies to Class Counsel is not warranted.

A.   **Jurisdiction Over the Opt-Outs**

In reaching their final settlements, the Parties agreed that I would retain limited, continuing jurisdiction of this matter.  Thus, all my Final Approval Orders -- which were prepared by Class Counsel and entered on consent -- include only the following jurisdictional provision:

> Without affecting the finality of this judgment in any way, this Court retains continuing and exclusive jurisdiction over all matters relating to administration, consummation, enforcement, and interpretation of the Settlement Agreement and of this Order, to protect and effectuate this Order, and for any other necessary purpose. [Defendant], Plaintiffs, and each member of the [ ] Class are hereby deemed to have irrevocably submitted to the exclusive jurisdiction of this Court, for any suit, action, proceeding, or dispute arising out of or relating to the Settlement Agreement and its exhibits.  Solely for the purposes of such suit, action, or proceeding, to the fullest extent they may effectively do so under applicable law, the Parties are deemed to have irrevocably waived any claim or objection that they are not subject to the jurisdiction of this Court, or that this Court is, in any way, an improper venue or an inconvenient forum.

(Doc. Nos. 940 ¶ 12, 941 ¶ 12, 942 ¶ 12, 943 ¶ 12, 944 ¶ 12; see also Doc. Nos. 503 ¶ 14, 867 ¶ 12, 868 ¶ 12, 869 ¶ 13.)  The settling opt-outs are not bound by this provision because they are not members of the Class.  Indeed, each Final Approval Order listed all the opt-outs and provided that "This Order shall have no force or effect on these persons or entities." (Doc. Nos. 503 ¶ 7, 867 ¶ 5, 868 ¶ 5, 869 ¶ 5, 940 ¶ 4, 941 ¶ 4, 942 ¶ 4, 943 ¶ 4, 944 ¶ 4.)  In these circumstances,

because I do not have jurisdiction over entities that are no longer Parties to this litigation, I cannot order them to pay Class Counsel's fees.

Class Counsel contend that Drelles v. Metropolitan Life Insurance Co. provides that courts may retain jurisdiction over opt-out plaintiffs. 90 Fed. Appx. 587 (3d Cir. 2004) (non-precedential). I do not agree. The Drelles Court upheld an order requiring opt-outs to pay class counsel a fee for the time they spent retrieving discovery documents from a depository they administered. In seeking the production of documents, the opt-outs obviously submitted themselves to the court's jurisdiction -- at least with respect to the relief sought. This situation presented here is very different. As I explain below, the opt-outs have not subjected themselves to this Court's jurisdiction.

Counsel also argue that the common fund doctrine provides me with jurisdiction to order the opt-outs to return money to Class Counsel. Again, I do not agree. The Supreme Court has described the common fund doctrine as follows:

> [T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole. . . . The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense. . . . Jurisdiction over the fund involved in the litigation allows a court to prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit.

Boeing v. Van Gemert, 444 U.S. 472, 478 (1980). Applying the common fund doctrine, I have already awarded Class Counsel over $37 million in attorneys' fees. (Doc. Nos. 947, 987.) The doctrine does not, however, create eternal jurisdiction over monies that were once in the common fund.

Jurisdiction over a "common fund" is "generally satisfied by jurisdiction over a party that controls the fund." Alan Hirsch and Diane Sheehey, Awarding Attorneys' Fees and Managing Fee Litigation 68 (2d ed. 2005). The money the opt-outs have already received from settlement funds is obviously no longer under the control of either Plaintiffs or Defendants. Accordingly, the common fund doctrine does not afford me jurisdiction to order non-Parties -- such as the opt-outs -- to pay Class Counsel's fees. See id. at 94 ("In general, a court cannot order fees paid by beneficiaries personally if they are not party to the litigation."); see also In re Brand Name Prescription Drugs Antitrust Litig., 115 F.3d 456, 457 (7th Cir. 1997) (opt-outs are no longer class members and thus not parties).

My conclusion that I am without jurisdiction over the opt-outs is consistent with those reached in analogous cases. See In re Showa Denko K.K. L-Tryptophan Prod. Liab. Litig. II, 953 F.2d 162, 165-66 (4th Cir. 1992) ("As in any other case, a transferee court's jurisdiction in multi-district litigation is limited to cases and controversies between persons who are properly parties to the cases transferred, and any attempt without service of process to reach others who are unrelated is beyond the court's power."); Hartland v. Alaska Airlines, 544 F.2d 992 (9th Cir. 1976) (granting writ of mandamus and ordering district court to return funds deposited by non-parties into a discovery fund in a multi-district case); In re Linerboard Antitrust Litig., 292 F. Supp. 2d 644 (E.D. Pa. 2003) (in MDL case, court lacked jurisdiction to award counsel fees from settlements or judgments secured by former class members who opted out).

Finally, Class Counsel argue that the opt-outs have submitted to this Court's jurisdiction. The record shows just the opposite. For instance, Counsel suggest that I presently have jurisdiction over Home Depot because in the Spring of 2007, I enforced a subpoena the Indirect

5

Purchaser Plaintiffs had served on Home Depot.  (Doc. Nos. 324, 330.)  Counsel apparently ignore, however, that since then, I have certified the Direct Purchaser Plaintiffs Class and Home Depot has opted out.  I have no jurisdiction over Home Depot because it is not a Party to this litigation.

Class Counsel also suggest that Bailey Lumber has submitted to the Court's jurisdiction because of its "willingness to engage" in the litigation of this case.  (Doc. No. 962 at 7.)  Counsel refer here to their earlier challenge to the assignment of certain claims by Lumbermens Merchandising Corporation to Bailey.  See Memorandum and Order of January 14, 2009 (Doc. No. 968).  I determined that because the assignment was proper, Bailey's opt-out included the assigned claims.  Id.  In contesting Class Counsel's challenge to the assignment, Bailey -- which contended I no longer had jurisdiction once it opted out -- submitted a brief as *amicus curiae*.  This hardly amounts to a "submission" to this Court's jurisdiction.  See, e.g., Sciotto v. Marple Newtown Sch. Dist., 70 F. Supp. 2d 553, 554 (E.D. Pa. 1999) (*amicus curiae* not a party to the case).

Class Counsel have not suggested how the remaining opt-outs submitted to the Court's jurisdiction -- presumably because Counsel recognize that they have not.

In these circumstances, it is apparent that there is no basis for me to assert jurisdiction over the opt-outs.  Accordingly, I cannot order the opt-outs to pay Class Counsel's fees.

**B.    Equitable Considerations**

It is unclear how much money due to the opt-outs remains in the settlement fund bank account pending distribution.  Although I have jurisdiction to order disbursement of these monies to Class Counsel, I decline to do so.

6

Class Counsel believe that they, through their "massive and successful efforts" in this complex case, were in no small measure responsible for the settlements subsequently achieved with the opt-outs. (Doc. No. 962 at 8.) My fee awards and approvals to date indicate that I do not disagree. Recognizing the brilliant work done by Lead Counsel, Jeffrey Corrigan and his law firm Spector Roseman Kodroff & Willis, P.C., I have approved disbursement to them of over $12.6 million in fees. Co-Lead Counsel, Cohen Milstein Sellers & Toll, P.L.L.C., has received over $3.1 million in fees. The remaining thirty-six firms representing the Direct Purchaser Plaintiffs shared in the remainder of the $37 million counsel fee award. See Doc. No. 987. In accordance with the formula neogtiated and urged by Class Counsel, those amounts included a portion of the monies initially designated for the opt-outs. Thus Class Counsel have already received compensation (by a formula of their own choosing) for their work respecting the opt-outs.

In these circumstances, I do not believe it would be appropriate to award Class Counsel additional fees from any undisbursed opt-out monies that might remain in the settlement fund account.

An appropriate Order follows.

**BY THE COURT:**

/s/ Paul S. Diamond

_____
**Paul S. Diamond, J.**