# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: HYDROGEN PEROXIDE ANTITRUST LITIGATION | Civil Action No. 05-666 |
| | MDL Docket No. 1682 |
| THIS DOCUMENT RELATES TO: ALL DIRECT PURCHASER ACTIONS | CLASS ACTION |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ALLOCATION OF ATTORNEYS' FEES CURRENTLY HELD IN ESCROW

On July 14, 2009, this Court entered an Order granting Class Counsel's Petition for Attorneys' Fees and Reimbursement of Litigation Expenses. Those fees have now been paid and expenses reimbursed, with one exception. The portion of attorneys' fees and expenses to be paid to the firms of Cohen Milstein Sellers & Toll PLLC and Hausfeld LLP, respectively, remain in escrow pending an Order or agreement with respect to how those fees should be allocated between those two firms. Although the firms have attempted to negotiate an amicable resolution of this question, such attempts have been unavailing and appear futile. Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") therefore respectfully requests that this Court enter an Order allocating the attorneys' fees payable to these two firms.

### BACKGROUND

This litigation commenced with the filing of thirty direct purchaser class actions beginning on February 11, 2005. Between May 15, 2007 and March 25, 2008, Plaintiffs reached settlements with four of the six groups of defendants, in amounts totaling $87,383,080.00, before interest. After approving these settlements, the Court, on October 17, 2008, awarded attorneys'

fees in the amount of 30% of the settlement funds. Dkt. No. 520. These funds have been distributed to plaintiffs' counsel.[1]

On November 6, 2008, one of the Co-Lead Counsel for the Class, Michael D. Hausfeld, parted ways with Cohen Milstein and on November 10, 2008, he formed his new law firm, Hausfeld LLP. On December 22, 2008, this Court amended its Orders appointing Interim Co-Lead Counsel and Class Counsel to reflect Mr. Hausfeld's change in firm affiliation. Dkt. No. 539.

On January 28, 2009, and April 15, 2009, respectively, Plaintiffs settled with the two remaining defendant groups, Arkema and FMC, for a total of $10,000,000.00, before interest.[2] On July 7, 2009, Class Counsel sought an award of attorneys' fees and reimbursement of expenses from these settlement funds. Dkt. No. 569.

In connection with the July 7, 2009 application for an award of attorneys' fees and reimbursement of expenses, William P. Butterfield, a Partner at Hausfeld LLP, submitted a Declaration seeking payment of attorneys' fees and reimbursement of expenses that encompassed hours billed and expenses incurred both by Hausfeld LLP and by Cohen Milstein. *See* Declaration of William P. Butterfield in Support of Application for Attorneys' Fees and Reimbursement of Expenses Filed on Behalf of Hausfeld LLP, at n.1 (Exhibit 1 hereto). Mr. Butterfield neither sought nor received authorization from Cohen Milstein prior to submitting a Declaration encompassing Cohen Milstein's fees and expenses. See Declaration of Richard A. Koffman, Exhibit 2 hereto, at ¶ 4. Indeed, Cohen Milstein did not learn of the existence of that

---

[1]    As the Court may recall, after initial disagreements between Cohen Milstein and Hausfeld LLP with regard to their respective claims to a portion of these fees, all interested parties agreed to wire the contested funds directly to Cohen Milstein's bank to pay down the firm's line of credit, on which Mr. Hausfeld was a guarantor.

[2]    The FMC settlement provided for payment of $10,000,000.00, and the Arkema settlement was non-monetary.

Declaration until July 22, 2009, when Mr. Butterfield proposed to submit a similar Declaration in another matter. *Id.* at ¶¶ 2-4. When Richard Koffman of Cohen Milstein objected to Mr. Butterfield's submitting such a Declaration, Mr. Butterfield stated that he had done so in the *Hydrogen Peroxide* matter and saw no reason not to follow the same procedure in the other case. *Id.* at ¶ 3.

At a hearing on July 14, 2009, this Court specifically asked Mr. Hausfeld whether there would be any issues the Court would have to consider with respect to the allocation of attorneys' fees, and Mr. Hausfeld represented that there would not be. July 14, 2009 Hearing Tr. at 4:11 – 5:6.[3] Mr. Hausfeld's representation to the Court is puzzling, given that at the time it was made,

---

[3]     The relevant colloquy at the hearing went as follows:

THE COURT:  And with respect to the allocation of the fee --

MR. BOLOGNESE:  Yes, sir.

THE COURT:  -- the $3 million sought among you folks, you've got all that agreed to?

MR. BOLOGNESE:  Yes, your Honor.  We have asked for the Court's permission to distribute that in the collective judgment --

THE COURT:  Which we've done in other matters.

MR. BOLOGNESE:  -- of lead counsel.

THE COURT:  But, of course, we've had a couple of bumps, if you will, in the road that were resolved ultimately.  There's no bumps in the road?

MR. BOLOGNESE:  To my knowledge, your Honor, with respect to my firm, there's not, and I'm not aware of any with respect to any of the other firms.

THE COURT:  Mr. Hausfeld, everything is all okay?

MR. HAUSFELD:  Yes, your Honor.

THE COURT:  Okay, there's no issues that I'll have to consider?

MR. HAUSFELD:  No, your Honor.

-3-

no one from Hausfeld LLP had even discussed the allocation of these fees with anyone at Cohen Milstein.

By Order dated July 14, 2009 (Dkt. No. 578), the Court awarded attorneys' fees in the amount of 30% of the settlement funds, and reimbursement of litigation expenses in the amount of $23,104.64. Cohen Milstein understands that the bulk of those fees and expenses have been distributed among plaintiffs' counsel, but that the portion payable to Cohen Milstein and Hausfeld LLP (hereinafter "the contested fees") has been placed in escrow pending a determination with respect to its appropriate allocation.[4]

In light of Class Counsel's submissions to the Court and the Court's July 14, 2009 fee Order, both of which contain language supporting such an allocation, Cohen Milstein proposed that the fees payable to Cohen Milstein and Hausfeld LLP, respectively, be allocated in proportion to each firm's lodestar since the inception of the case. *See* August 20, 2009 e-mail from Richard Koffman to William Butterfield, Exhibit 3 hereto. In support of this allocation, Cohen Milstein noted that in its July 14, 2009 fee Order, the Court used the lodestar and multiplier from the inception of the case to perform its lodestar cross-check analysis. *Id.* Cohen Milstein further noted that all of the work done in the case helped produce the final settlements, not just the work done since the initial settlements. *Id.* Finally, Cohen Milstein offered to negotiate a slight discount from the fees to which such an allocation would entitle it in order to avoid the need for judicial intervention. *Id.*

By letter dated August 24, 2009, Hausfeld LLP termed Cohen Milstein's proposal "astonishing," and instead proposed either (1) to allocate the contested fees based only on the lodestar of the two firms from September 1, 2008 through June 30, 2009; or (2) to allocate *all* of

---

[4]    The contested fees are believed to be approximately $500,000.

the two firms' fees in the case, *including those awarded by the Court before Mr. Hausfeld left Cohen Milstein*, based on the firms' respective lodestars from the inception of the case. *See* August 24, 2009 letter from William Butterfield to Richard Koffman, Exhibit 4 hereto.

By letter dated August 28, 2009 (Exhibit 5 hereto), Cohen Milstein rejected each of Hausfeld LLP's proposals, noting that: (1) allocating the contested fees based only on a small subset of the work done by the two firms was neither fair nor reasonable and found no support in the Court's fee Order; and (2) Hausfeld LLP's suggestion that it share in fees earned and awarded by the Court before that firm came into existence conflicts with the Settlement Agreement reached between Cohen Milstein and Hausfeld LLP in February 2009, in which Hausfeld LLP agreed to "unconditionally waive any claim to a share of fees and expense reimbursements" earned prior to November 6, 2008 in this matter. *See* Confidential Agreement, dated February 4, 2009, at ¶ 13.[5]

Because Cohen Milstein and Hausfeld LLP are unable to agree on the appropriate method of allocating the contested fees, Cohen Milstein respectfully seeks an Order from this Court with respect to their allocation. For the reasons set forth below, Cohen Milstein believes the contested fees should be allocated in proportion to the two firms' lodestars from the inception of the case. Based on the lodestar figures included in Mr. Butterfield's Declaration, it appears that Cohen Milstein should receive 90.31% of the contested fees, and Hausfeld LLP should receive 9.69% of the contested fees. *See* Exhibits 1 and 3 hereto (Butterfield Declaration and Koffman e-mail dated August 20, 2009).[6]

---

[5]    In light of its confidential nature, that Agreement is not filed herewith, but Cohen Milstein is prepared to submit it for the Court's *in camera* review if the Court so desires.
[6]    Cohen Milstein's lodestar from the inception of the case through June 30, 2009 is $3,445,970.25, and Hausfeld LLP's lodestar from the inception of the case through June 30, 2009 appears to be $369,735.00, *see id.*, which yields the above percentages.

## ARGUMENT

The final two settlements in this matter, with the Arkema Defendants and FMC Corporation, did not occur in a vacuum.  These settlements were the product of years of hard work by Plaintiffs' counsel in developing and prosecuting this case, which allowed Plaintiffs' counsel to weigh the risks and potential benefits of continued litigation against the benefits provided by the settlement agreements.  Plaintiffs' counsel's work in developing and litigating the case over the course of several years also provided them with the leverage needed to negotiate these settlements and bring this matter to a successful conclusion.  Thus, the allocation the contested fees should reflect the work done by Plaintiffs' counsel since the commencement of the litigation.

Indeed, in the papers filed in support of their application for an award of attorneys' fees from the final settlements, Class Counsel repeatedly relied on the work done since the inception of the case:

> "Thus, *most of the work that led up to the Arkema and FMC settlements was performed prior to the filing of the First Joint Declaration* [on October 1, 2008] and therefore, was detailed therein."[7]

> "Plaintiffs' extensive discovery efforts described in the First Joint Declaration [filed October 1, 2008] placed Co-Lead Counsel in a position to meaningfully assess the facts of this case." *Id.* at 4, ¶ 10.

> "As demonstrated below, even with the supplemental attorneys' fee award in the full amount requested herein, the total fee that will have been awarded to plaintiffs' counsel

---

[7]      Joint Declaration of Plaintiffs' Co-Lead Counsel in Support of Plaintiffs' Motion for (1) Final Approval of the Settlements Between Direct Purchaser Plaintiffs and Defendants FMC Corporation and Arkema France and Arkema, Inc.; (2) Approval of the Proposed Plan of Allocation; and (3) for an Award of Attorneys' Fees and Reimbursement of Expenses, at 4, ¶ 9 (emphasis added).

in this entire litigation will still represent a modest multiplier over their total lodestar for the entire litigation."[8]

➤ "As discussed above, prior to the settlements, merits discovery had concluded, Plaintiffs' counsel reviewed over 2.5 million pages of documents, including data regarding Hydrogen Peroxide sales transactions by Arkema, FMC, and other defendants, taken over 30 depositions, and had received cooperation from the defendants that had previously settled. . . . That work enabled Class Counsel to assess the strengths and weaknesses of the case." *Id.* at 18-19.

➤ "Class Counsel respectfully requests that the Court . . . compensate Class Counsel for its extensive work on this case with a fee award of 30% of the FMC Settlement Amount." *Id.* at 27.

➤ "Therefore, a supplemental award of attorneys' fees in the amount of 30% of the FMC settlement fund (30% of $10 million, or $3 million), when considered together with the lodestar value of Class Counsel's time since August 31, 2008 (as reported in paragraph 20 of Supplemental Co-Lead Counsel Declaration), and reported lodestar through August 31, 2008 and the Court's earlier fee award (as summarized in the Court's Interim Fee and Expense Order) (Docket No. 520), *would result in a multiplier of 1.255 over total reported lodestar for the entire litigation. . . .*" *Id.* at 31 (emphasis added).

In light of the fact that "most of the work that led up to the Arkema and FMC settlements was performed prior to the filing of the First Joint Declaration," it would make no sense to exclude work performed prior to the filing of the First Joint Declaration in allocating fees attributable to the Arkema and FMC settlements. Yet that is exactly what Hausfeld LLP has proposed to do. *See* Exhibit 4 hereto.

Alternatively, Hausfeld LLP proposes to re-allocate fees that were earned by and awarded to Cohen Milstein before Mr. Hausfeld left the firm. *See id.* Such a re-allocation makes no sense, in that it would allocate fees to a law firm that was not in existence when the fees were earned and awarded. Moreover, such a re-allocation conflicts with the Settlement Agreement reached between Cohen Milstein and Hausfeld LLP in February 2009, in which Hausfeld LLP

---

[8]    Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of the Proposed Settlements with Remaining Defendants Arkema, Inc., Arkema France, and FMC Corporation, and Plan of Allocation with Respect to FMC Settlement Funds, and Award of Attorneys' Fees and Reimbursement of Expenses, at 5.

agreed, in exchange for valuable consideration, to "unconditionally waive any claim to a share of fees and expense reimbursements" earned prior to November 6, 2008 in this matter.[9]

The most fair and reasonable method for allocating the contested fees between Cohen Milstein and Hausfeld LLP is based on the firms' respective lodestars from the inception of the litigation through June 30, 2009. The Court's July 14, 2009 Order Granting Approval to Class Counsel's Petition for Attorneys' Fees and Reimbursement of Litigation Expenses provides strong support for such an allocation. In its lodestar cross-check analysis, the Court used the lodestar and multiplier from the inception of the case, Order at 2 n.1, and noted "the eminent reasonableness of the total fees for the creation of an almost $100 million common fund." *Id.* The Court thus made clear that the fees awarded for the final settlements were not to be considered in isolation, but as part of the compensation of Plaintiffs' counsel for their work performed and results generated over the entire course of the litigation. The allocation of the contested fees should likewise reflect the work performed since the beginning of the litigation.

## CONCLUSION

For the foregoing reasons, Cohen Milstein respectfully requests that the Court issue an Order providing that the fees from the FMC settlement fund payable to Cohen Milstein and Hausfeld LLP be allocated between the two firms in proportion to their respective lodestars from the inception of this litigation.

---

[9]    The February 2009 Settlement Agreement was mediated by United States Magistrate Judge Timothy R. Rice of this District. Because the present dispute centers on this Court's allocation of attorneys' fees from the FMC settlement fund, rather than on interpretation of the February 2009 Agreement, Cohen Milstein believes it is appropriate for resolution by this Court.

| Dated: September 2, 2009 | Respectfully submitted, |
|---|---|
| | /s/ Agnieszka M. Fryszman |
| | Daniel A. Small |
| | Richard A. Koffman |
| | Agnieszka M. Fryszman |
| | **COHEN MILSTEIN SELLERS** |
| | **& TOLL PLLC** |
| | 1100 New York Avenue, N.W. |
| | Suite 500 West |
| | Washington, D.C. 20005 |
| | (202) 408-4600 |

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re: Hydrogen Peroxide Antitrust Litigation

This Document Relates To:
All Direct Purchaser Actions

Civil Action No. 05-666

MDL Docket No. 1682

**Hausfeld LLP's Response to CMST's Motion for
Allocation of Attorneys' Fees Currently Held in Escrow**

**Table of Contents**

I.    Introduction ................................................................................................................ 1

II.   Statement of Facts.................................................................................................... 2

III.  Argument .................................................................................................................. 7

        A.   HLLP and CMST Should Each Receive the Same Multiplier on Its
            Lodestar Since August 31, 2008 ............................................................... 8

        B.   If Lodestar Since Inception Is Used, Fees Since Inception Must Be Used
            As Well ....................................................................................................... 9

        C.   CMST's Position Violates Its Settlement Agreement with HLLP ....................... 11

        D.   CMST's Lack Of Good Faith................................................................................. 12

IV.   Conclusion ............................................................................................................... 13

## I.    Introduction

In what can only be described as a shameless money grab, Cohen Milstein Sellers & Toll, PLLC ("CMST") asks this Court to pay it twice for the same work and reward itself for a small lodestar since the last fee petition. This is  at the expense and to the determent of Hausfeld LLP ("HLLP"), which served as co-lead counsel during the same period, and which was materially responsible for the success of the underlying currently available fee.  By its petition, CMST seeks over 91 percent of the currently available attorney fee while allocating HLLP barely 9 percent, or put another way-- seeks nearly twenty times more for its work during the relevant period than HLLP. CMST's position is inequitable, illogical, and unwarranted. Additionally, the request is irreconcilably inconsistent with its settlement agreement with HLLP.[1]

CMST's proposal circumvented any good faith effort to meet and confer in an effort to achieve resolution without court intervention. In the midst of negotiations with HLLP, CMST delivered their last proposal to a partner at HLLP they knew was on vacation, and then --without reaching out to anyone else at HLLP or waiting for a reply -- filed their motion with this Court. This is an issue that should have been resolved on basic principles of equity and a pre-existing settlement agreement between the two firms.

HLLP respectfully submits that the most fair and straightforward way to divide the $504,870.69 in fees allocated to the two firms is for each firm to receive the same multiplier on the lodestar it incurred since August 31, 2008, the cut-off date for the last fee petition. This

---

[1] CMST's motion is inconsistent with a key provision of its February 2009 settlement agreement with HLLP – that HLLP is entitled to 100% of the fees awarded for work done by HLLP on or after November 6, 2008. Contrary to this provision, CMST contends that HLLP should receive just 14% of the value of its time for work done during this period. In light of its confidential nature, the private settlement agreement is not filed herewith, but Hausfeld LLP is prepared to submit it for *in camera* review.

1

would result in a multiplier to both firms of approximately 0.99, essentially paying each the full value of the time not compensated by the earlier fee award.

CMST, however, insists that its allocation be based on lodestar since the inception of the case, even though CMST has already been paid nearly $4.7 million for their prior work. But through a clear misreading of this Court's order awarding attorneys' fees, CMST asks to be paid twice for the same work by applying its overall lodestar percentage to the recent fee award alone, disregarding what it has already been paid. Thus, while CMST incurred approximately 91 percent of the total lodestar of both firms, it seeks over 99 percent of the total fees. CMST cannot be allowed to have it both ways: if the allocation is to use lodestar since inception, then it must also take into account the total fees awarded in the case, not just the fees awarded most recently.

CMST's conduct and proposal is manifestly unfair and unjust. Its request for relief should be denied. HLLP respectfully suggests that the Court consider referring this matter to Magistrate Judge Hart for mediation or further proceedings in light of Judge Hart's intimate familiarity with all of the settlement negotiations.

## II.    Statement of Facts

Shortly after the commencement of this litigation, this Court appointed four attorneys – including Michael D. Hausfeld, then of Cohen, Milstein, Hausfeld & Toll, P.L.L.C. ("CMHT") – as Interim Co-Lead Counsel for Plaintiffs. *See* Mar. 28, 2005 Order, Docket No. 25. When this Court certified the class, it appointed those same four lawyers as Class Counsel. *See* Jan. 19, 2007 Order, Docket No. 272.

Between May 15, 2007 and March 25, 2008, Plaintiffs – led by Mr. Hausfeld and CMHT attorneys William P. Butterfield and Reena A. Gambhir – reached settlements with four of the six groups of defendants, recovering over $87 million on behalf of the class. After

2

approving these settlements, the Court awarded over $26.2 million in attorneys' fees, constituting 30 percent of the settlement funds and representing a multiplier of 1.205 on a lodestar of $21,753,599.29 through August 31, 2008. *See* Oct. 17, 2008 Order, Docket No. 520; 1st Joint Decl. of Pls.' Co-Lead Counsel, Docket No. 517-4, ¶ 122.

On November 6, 2008, Mr. Hausfeld was expelled from CMHT, which then renamed itself CMST. Immediately thereafter, Mr. Hausfeld formed a new firm, HLLP, which Mr. Butterfield and Ms. Gambhir joined. These attorneys promptly informed this Court of their new firm affiliation.*See* Docket Nos. 526 & 528. No senior attorneys who had worked on this litigation remained at CMST.

Because Mr. Hausfeld had been appointed as co-lead counsel in his individual capacity, as a technical matter no modification of the Court's earlier orders was necessary. Nevertheless, to avoid any uncertainty that would be detrimental to class members, Mr. Hausfeld and HLLP moved to amend these orders to reflect the new firm. *See* Docket No. 537. CMST did not oppose this motion, and the Court granted it. *See* Dec. 19, 2008 Order, Docket No. 539.

Meanwhile, HLLP and CMST disagreed about the division of CMHT's share of the October 2008 fee award. Because HLLP did not want this dispute to impede or delay distribution of attorneys' fees to all of the other counsel in the litigation, it proposed that all of these other fees be distributed with the CMHT portion held in escrow, but CMST refused. HLLP filed a motion seeking this relief, and the other co-lead counsel agreed with HLLP's "commendable suggestion." *See* Docket Nos. 531 & 532. HLLP and CMST later resolved their dispute by agreeing to pay CMHT's entire share to CMST in order to reduce CMST's indebtedness and

3

avoid drastic action by CMST's bank. The motion was subsequently withdrawn. *See* Docket No. 533.[2]

In February 2009, following mediation before Magistrate Judge Timothy Rice of this Court, HLLP and CMST entered into a settlement agreement intended to resolve all disputes between the two firms. Paragraph 11 of the agreement provides as follows:

> As to any and all cases in which CMHT was involved prior to November 6, 2008 and in which Hausfeld LLP is or will become involved as counsel, Hausfeld LLP shall receive 100% of any fees and expense reimbursements awarded for work done by Hausfeld LLP on or after November 6, 2008, and CMST and each of the individual attorneys at CMST unconditionally waive any claim to any share of fees and expense reimbursements awarded in such cases for work done by Hausfeld LLP on or after November 6, 2008.

While these disputes were ongoing, HLLP attorneys, pursuant to their role as co-lead counsel, continued to work on behalf of the class. HLLP counsel was principally responsible for negotiating the settlements totaling $10 million with the remaining defendants on January 28, 2009 and April 15, 2009. Specifically, HLLP's work included: directing the overall strategy and prosecution of the case, negotiating the FMC and Arkema settlements, preparing the settlement papers and escrow agreements, and administrating the prior settlements. This work was detailed and time-intensive. T he FMC negotiations in particular were "long and arduous." 2nd Joint Decl. of Pls.' Co-Lead Counsel, Docket No. 569 ¶ 14. By contrast, CMST had no representation of any kind,or in an y aspect,in reaching the final settlements.

---

[2] Although Mr. Hausfeld – along with the other current and former equity partners of CMHT – was a personal guarantor of the credit line and could have been held liable if CMST defaulted, repayment of the bank was CMST's obligation. Significantly, no portion of the October 2008 fee award was received by HLLP.

Plaintiffs moved for final approval of the settlements and for an award of an additional $3 million in attorneys' fees. The joint declaration submitted by the four co-lead counsel described the lodestar incurred since August 31, 2008:

> The lodestar value of Plaintiffs' time spent on this litigation since August 31, 2008, the temporal cutoff for their reported lodestar as reflected in the Court's Interim Fee and Expense Order, is $1,524,972.50. Therefore, a supplemental award of attorneys' fees in the amount of 30% of the FMC settlement fund (30% of $10 million, or $3 million), when considered together with the lodestar value of Class Counsel's time since August 31, 2008 and reported lodestar through August 31, 2008 and the Court's earlier fee award [as summarized in the Court's Interim Fee and Expense Order, at ¶2 (Docket No. 520)], would result in a multiplier of 1.255 over total reported lodestar for the entire litigation, which is well within (and indeed still below) the range of multiplier approved in comparable cases by this Court and others.

*Id.* ¶ 21. The 1.255 multiplier described in the joint declaration was arrived at by dividing total lodestar since inception by the total amount of fees previously awarded and currently requested:

$$\frac{\text{Total fees of } \$29,214,924.00}{\text{Total lodestar of } \$23,278,571.79} = 1.255 \quad \text{multiplier}$$

Thus, the calculation did not divide just the requested $3 million fee by the total lodestar since inception but accounted for the total fees.

A separate declaration submitted by Mr. Butterfield set forth the lodestar incurred by both CMHT and HLLP since August 31, 2008. CMHT's lodestar was based on figures reported by CMHT and CMST to Rust Consulting, a third-party timekeeper, throughout the litigation; because this information was available and could easily be included in a single declaration, there was no need for CMST to file a separate declaration or to be involved in the ministerial act of filing Mr. Butterfield's declaration.[3]

---

[3] Indeed, because no attorney remaining at CMST had done any substantial work on the case, it would have been difficult, if not impossible, for anyone at that firm to file a

HLLP's lodestar since August 31, 2008 (actually, since November 6, 2008, when Mr. Hausfeld was expelled from CMHT) totaled $335,313.75 as of June 30, 2009. (HLLP continues to spend a significant amount of time working on the litigation.) According to CMST, its lodestar since August 31, 2008 totaled $175,640.[4]

Following a hearing on July 14, 2009, this Court granted the motions for final approval and awarded $3 million in attorneys' fees. *See* Docket No. 578. In doing so, the Court noted that a lodestar cross-check resulted in an overall multiplier of 1.255. *Id.* at 2 n.1. Again, this calculation divided the total lodestar by the total fees awarded, not just by the $3 million fees awarded in the July 14, 2009 order.

At the hearing, this Court asked co-lead counsel whether there would be any "bumps in the road" regarding fee allocation, and asked Mr. Hausfeld whether there were any "issues that I'll have to consider." Mr. Hausfeld – given the settlement agreement between HLLP and CMST and the existence of a straightforward method to allocate the fees – did not anticipate any such problems and informed the court accordingly. *See* Hr'g Tr.,Jul y 14, 2009 at 4:11-5:6. Mr. Hausfeld and HLLP sincerely regret that they did not foresee the extraordinary position that CMST would later take.

On August 19, 2009, Mr. Butterfield informed Richard Koffman, a partner at CMST, that he would "be in touch soon about the fee allocation." *See* email string, with attachments, between William Butterfield and Richard Koffman, at 1 (attached hereto as Exhibit A). The next

---

declaration that provided anything more than the information available through the Rust report and included in Mr. Butterfield's declaration.

[4] These amounts do not total the $545,375 reported in Mr. Butterfield declaration, which was based on lodestar of $210,061.25 reported to Rust Consulting by CMHT and CMST, rather than the $175,640 now claimed by CMST. This discrepancy does not materially change the overall multiplier reported to the Court, but would only increase it slightly from 1.255 to 1.257. In this memorandum, HLLP uses the $175,640 figure as CMST's lodestar since August 31, 2008.

6

day, without waiting for Mr. Butterfield's proposal, Mr. Koffman wrote that it was "clear from the Court's fee Order" that CMST should receive over 90 percent of the fees payable to the two firms from the July 2009 award. *Id.* at 2. Mr. Koffman based this demand on the Court's .reference to lodestar since inception; he then applied CMST's percentage of both firms' total lodestar to their share of the $3 million fee (rather than to the total fees awarded, as the Court had done). *Id.*

On August 24, 2009, Mr. Butterfield responded that CMST's demand seemed to be a quite "astonishing proposal." *Id.* at 5. In response, HLLP proposed instead that the fees be allocated in one of two ways: (1) in proportion to each firm's lodestar since August 31, 2008, which would result in each firm receiving the same multiplier for that time, or (2) if CMST preferred to use lodestar since inception, then taking into account the fees that had already been awarded to CMST, so that CMST's share of the total fees was in proportion to its share of the total lodestar. *See* CMST Mem., Ex. 4. In an email accompanying this letter, Mr. Butterfield explained that he and Mr. Hausfeld would be on vacation but that he "look[ed] forward to receiving [Mr. Koffman's] response and resolving the issue soon." *See* email string, with attachments, between William Butterfield and Richard Koffman, at 6. (attached hereto as Exhibit A.)

Mr. Koffman responded three days later, while Messrs. Butterfield and Hausfeld were on vacation. *See* CMST Mem., Ex. 5. Then, without waiting for a response from HLLP or attempting to confer further, CMST filed its motion on September 2, 2009.

## III.    Argument

The attorney fees allocated to HLLP as co-lead counsel in relation to the FMC and Arkema settlements should be allocated between HLLP and CMST in proportion to each firm's

7

lodestar since August 31, 2008, giving each firm the same multiplier on the lodestar that has not yet been compensated. If, however, CMST prefers to use lodestar since inception, then fees since inception must be used as well, so that CMST's total fees for the litigation are in proportion to its total lodestar. CMST's proposal would however, reward itself with a multiplier of over 2.6 on its uncompensated time while limiting HLLP to receiving a multiplier of under 0.14. In other words, CMST seeks to leverage to itself over 91 percent of the fees allocated to HLLP as co-lead counsel arising predominately from the FMC and Arkema settlements for which they recorded approximately only 34 percent of the actual aggregate time.

### A.    HLLP and CMST Should Each Receive the Same Multiplier on Its Lodestar Since August 31, 2008

The most fair and straightforward way to divide the $504,870.69 in fees allocated to the two firms is for each firm to receive the same multiplier on the lodestar it incurred since August 31, 2008, the cut-off date for the last fee petition. This would result in a multiplier of approximately 0.99, essentially paying each firm the full value of the time not compensated by the earlier fee award:

| HLLP's Proposal | | | | |
|------|----------|------------|------|------------|
| Firm | Lodestar | Percentage | Fee | Multiplier |
| HLLP | $335,313.75 | 65.63% | $331,321.57 | 0.98809421 |
| CMST | $175,640.25 | 34.37% | $173,549.11 | 0.98809421 |
| Totals | $510,954.00 | 100.00% | $504,870.69 | |

CMST, by including millions of dollars in time for which it has already been compensated, demands over 91 percent of the recent fee award, which would result in CMST being paid more than $460,000 for less than $176,000 worth of work (a multiplier of over 2.6), while HLLP would be paid less than $45,000 for more than $335,000 worth of work (a multiplier of under 0.14):

8

| CMST's Proposal | | | | |
|---|---|---|---|---|
| **Firm** | **Lodestar** | **Percentage** | **Fee** | **Multiplier** |
| HLLP | $335,313.75 | 8.87% | $44,770.53 | 0.13351832 |
| CMST | $175,640.25 | 91.13% | $460,100.16 | 2.61955991 |
| Totals | $510,954.00 | 100.00% | $504,870.69 | |

CMST's proposal yields to them a huge and gratuitous windfall. The irony of the request is illustrated by the fact that the very same lawyers who worked on the case, for which CMST is now claiming credit, are the very same lawyers who worked on the case for HLLP.W hat CMST is suggesting is that the value of these lawyers' services dropped 95 percent when they no longer worked at their firm. Put another way, this would mean that CMST would receive approximately $1965 per hour for work done by Mr. Hausfeld on November 5, 2008, while HLLP would be paid just $100 per hour for work done by Mr. Hausfeld on November 6, 2008. This is anything but "fair and reasonable." CMST Mem. at 8.

**B.    If Lodestar Since Inception Is Used, Fees Since Inception Must Be Used As Well**

Even though it has already been paid nearly $4.7 million for approximately $3.27 million worth of work it did from inception of the case through August 31, 2008 (a multiplier of over 1.4), CMST wants to be paid for this work a second time by using that same lodestar as the basis for allocating the new fee. But if the allocation is to use lodestar since inception, then it must also take into account the total fees awarded in the case, not just the fees awarded most recently.

CMST incurred over 91 percent of the two firms' total lodestar since inception of the litigation.Yet CMST is not content with receiving 91 percent of the total fees awarded to CMST and HLLP, instead demanding total fees of nearly $5.2 million, or over 99 percent of the combined fees:

9

| CMST's Proposal | | |
|---|---|---|
| **Fee Award** | **Amount** | **Percentage** |
| Prior Fees to CMST | $4,697,220.72 | 90.29% |
| New Fees to CMST | $460,100.16 | 8.84% |
| New Fees to HLLP | $44,770.53 | 0.86% |
| Total | $5,202,091.41 | 100.00% |

In addition to being manifestly unfair, CMST's proposal is illogical, because it applies lodestar for the entire case to just a small portion of the total fees awarded. If CMST prefers to base the allocation on lodestar since inception, then its calculations must be corrected so that its total share of the fees are in proportion to its total share of the lodestar:

| CMST's Proposal (Corrected) | | | | |
|---|---|---|---|---|
| **Firm** | **Lodestar** | **Percentage** | **Fee** | **Multiplier** |
| HLLP | $335,313.75 | 8.87% | $461,307.00 | 1.375747341 |
| CMST | $3,445,970.25 | 91.13% | $4,740,784.41 | 1.375747341 |
| Totals | $3,781,284.00 | 100.00% | $5,202,091.41 | |

Contrary to CMST's argument, correcting its calculations in this manner does not "re-allocate fees that were earned by and awarded to [CMST]." CMST Mem. at 7. The $4.7 million previously paid to CMST would be untouched, and CMST would receive additional fees from the July 2009 award. There is more than enough in the current fee award to pay HLLP 8.87 percent of the total fees allocated to the two firms.

Of course, CMST would receive less under its corrected proposal than it would under HLLP's proposal to allocate the fees in proportion to each firm's lodestar since August 31, 2008. As discussed above, HLLP believes that its proposal is the most fair and straightforward way to allocate the recently awarded fees, even though it would result in CMST receiving almost 94 percent of the combined fees for both firms – more than the amount to which CMST is entitled under its own logic.

10

In support of its misguided argument for over 99 percent of the total fees, CMST misreads this Court's July 2009 order. CMST notes that the Court used the lodestar and multiplier from the inception of the case, and it even quotes from the paragraph of counsel's declaration that sets forth how this calculation was performed. *See* CMST Mem., at 7. But while CMST emphasizes a portion of the last sentence of that paragraph, it ignores the reference in the prior sentence to "the Court's earlier fee award," which was likewise included in the overall multiplier:

> The lodestar value of Plaintiffs' time spent on this litigation since August 31, 2008, the temporal cutoff for their reported lodestar as reflected in the Court's Interim Fee and Expense Order, is $1,524,972.50. Therefore, a supplemental award of attorneys' fees in the amount of 30% of the FMC settlement fund (30% of $10 million, or $3 million), when considered together with the lodestar value of Class Counsel's time since August 31, 2008 and reported lodestar through August 31, 2008 *and the Court's earlier fee award* [as summarized in the Court's Interim Fee and Expense Order, at ¶2 (Docket No. 520)], would result in a multiplier of 1.255 over total reported lodestar for the entire litigation, which is well within (and indeed still below) the range of multiplier approved in comparable cases by this Court and others.

2nd Joint Decl. of Pls.' Co-Lead Counsel, ¶ 14 (emphasis added). Without the inclusion of the earlier fee award, the overall multiplier used in the lodestar cross-check would have been 0.129, not 1.255. Thus, CMST's proposal to use lodestar from inception without also using fees since inception is improper.

## C.    CMST's Position Violates Its Settlement Agreement with HLLP

As discussed above, CMST contends that HLLP should receive less than $45,000 for more than $335,000 worth of work, or just 14 percent of the value of its time. This position violates Paragraph 11 of CMST's settlement agreement with HLLP, which guarantees HLLP "100% of any fees and expense reimbursements awarded for work done by Hausfeld LLP on or

11

after November 6, 2008." CMST's proposal that HLLP receive not 100 percent, but merely 14 percent, of the fees awarded for the work it did on or after November 6, 2008 is completely contrary to the plain language of the settlement agreement.

**D.      CMST's Lack of Good Faith**

CMST's claim that it has "attempted to negotiate an amicable resolution" of this issue, but that "such attempts have been unavailing," stands at odds with its premature filing of this motion. CMST Mem. at 1. After Mr. Butterfield received an email from Mr. Koffman regarding the allocation of fees, he responded with a letter proposing two alternatives and explained that he would be on vacation but that he "look[ed] forward to receiving [Mr. Koffman's] response and resolving the issue soon." *See* email string, with attachments, between William Butterfield and Richard Koffman, at 6 (attached hereto as Exhibit A). Despite knowing that Mr. Butterfield (and Mr. Hausfeld) were on vacation, Mr. Koffman responded three days later only to Mr. Butterfield, and then filed this motion without waiting for a response. *Id.* at 7-8.

CMST's rush to the courthouse terminated the negotiations before they could be legitimately pursued. At a minimum, professional civility would have required that CMST at least wait for Mr. Butterfield to return to the office to determine whether there was any possibility of narrowing the grounds of disagreement. Unfortunately, CMST left civility behind long ago. *See Philadelphia Gear Corp. v. Swath Intern., Ltd.,*200 F.Supp.2d 493, 497 - 498 (E.D.Pa. 2002) ("the Pennsylvania Supreme Court recently stated that "[t]he hallmark of an enlightened and effective system of justice is the adherence to standards of professional responsibility and civility.... Uncivil or obstructive conduct impedes the fundamental goal of resolving disputes in a rational, peaceful and efficient manner." *In re: Adoption of Code of Civility,* No. 258, Supreme Court Rules, Docket No. 1, Code of Civility at 1 (Pa. Dec. 6, 2000)").

12

CMST's motion is so without devoid or merit as to be specious. It seeks, without any reasonable basis, a result which is completely unjustifiable.

## IV.    Conclusion

For the foregoing reasons, this Court should deny CMST's motion and award each firm the same multiplier on its lodestar since August 31, 2008 and consider any additional relief as it may deem just and proper under the circumstances. [5] HLLP respectfully suggests that the Court may desire to refer this matter to Magistrate Judge Hart for mediation or further proceedings since the Magistrate was intimately involved with all the negotiated settlements.

Dated: September 9, 2009                    Respectfully submitted,

                                            */s/ Michael D. Hausfeld*
                                            Michael D. Hausfeld (D.C. Bar #153742)
                                            William P. Butterfield

                                            HAUSFELD LLP
                                            1700 K Street, NW Suite 650
                                            Washington, DC 20006
                                            202.540.7200 ph
                                            202.540.7201 fax

---

[5] This additional relief could include: (a) the time incurred by HLLP in defending CMST's motion; (b) an adjustment of HLLP's multiplier in this matter; or (c) any other relief the Court finds reasonable. *See e.g. Chambers v. NASCO Inc.,* 501 U.S. 32, 45-46 (1991) (recognizing the courts' inherent powers to "assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons" and when "a party shows bad faith by delaying or disrupting the litigation").

13

# EXHIBIT C

Joseph W. Cotchett (36324; jcotchett@cpmlegal.com)
Steven N. Williams (175489; swilliams@cpmlegal.com)
**COTCHETT, PITRE & McCARTHY**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

Michael D. Hausfeld (*pro hac vice*; mhausfeld@cmht.com)
Charles E. Tompkins (*pro hac vice*; ctompkins@cmht.com)
**COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.**
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

*Interim Co-Counsel for the Putative Plaintiff Class*

Charles E. Koob (47349; ckoob@stblaw.com)
Jonathan K. Youngwood (*pro hac vice*;
    jyoungwood@stblaw.com)
**SIMPSON THACHER & BARTLETT LLP**
425 Lexington Avenue
New York, New York 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Counsel for Virgin Atlantic Airways Ltd.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE INTERNATIONAL AIR TRANSPORTATION SURCHARGE ANTITRUST LITIGATION | Case No. M:06-cv-01793-CRB<br><br>MDL No. 1793<br><br>Honorable Charles R. Breyer |
| This Document Relates To:<br><br>ALL ACTIONS | **STIPULATION AS TO VIOLATION BY DEFENDANT VIRGIN ATLANTIC AIRWAYS LTD.** |

WHEREAS, on July 9, 2007, Plaintiffs filed their First Consolidated Amended Complaint in the above-captioned case alleging that Defendants British Airways Plc ("British Airways"), Virgin Atlantic Airways Ltd. ("Virgin Atlantic"), United Air Lines, Inc., AMR Corporation, and American Airlines, Inc. engaged in a conspiracy to fix, raise, maintain, and/or stabilize prices for long-haul passenger flights with at least one segment arriving in or departing from the United Kingdom by fixing the price of fuel surcharges imposed on tickets for such flights.

WHEREAS, Virgin Atlantic has been granted full immunity from criminal prosecution for price fixing with respect to fuel surcharges for long-haul passenger flights between the United States and the United Kingdom under the United States Department of Justice's Corporate Leniency Program.

WHEREAS, Virgin Atlantic has been granted immunity from prosecution for price fixing with respect to fuel surcharges for long-haul passenger flights to and from the United Kingdom under the Office of Fair Trading's Leniency Program.

NOW THEREFORE, it is hereby STIPULATED and AGREED as follows:

1. On the following dates, Virgin Atlantic implemented increases or decreases to passenger fuel surcharges for long-haul passenger flights to and from the United Kingdom:

| Date | Increase / Decrease |
| --- | --- |
| August 11, 2004 | Increase |
| October 14, 2004 | Increase |
| March 24, 2005 | Increase |
| June 27, 2005 | Increase |
| September 7, 2005 | Increase |
| November 21, 2005 | Decrease |
| January 9, 2006 | Increase |

These passenger fuel surcharges applied to flights to and from the United States.

2. Prior to each increase or decrease to passenger fuel surcharges for long-haul

- 2 -

STIPULATION AS TO VIOLATION BY DEFENDANT
VIRGIN ATLANTIC AIRWAYS LTD.

passenger flights identified in paragraph 1, one or more employees of Virgin Atlantic had conversations or other communications with one or more employees of British Airways.

3.    The communications referenced in paragraph 2 resulted in certain agreements being reached concerning passenger fuel surcharges, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

4.    The communications referenced in paragraph 2 resulted in certain agreements being reached concerning passenger fuel surcharges, in violation of Chapter I(2)(1) of the United Kingdom's Competition Act 1998, Chapter 41, 9 November 1998 (the "Competition Act").

5.    Notwithstanding the stipulation contained in paragraph 4, both Plaintiffs and Virgin Atlantic agree that such stipulation is not a concession that this court, or any court in the United States, has jurisdiction over claims arising under the laws of any nation or jurisdiction other than the United States.

6.    Both Plaintiffs and Virgin Atlantic agree that nothing contained herein shall constitute an admission by Virgin Atlantic that any customer, claimant, or other person, whether natural or legal, suffered any harm or damage, financial or otherwise, arising from the violations of law Virgin Atlantic stipulates to in paragraphs 3 and 4 or any facts Virgin Atlantic stipulates to herein.

Respectfully submitted,

Dated: September **13**, 2007

Joseph W. Cotchett (SBN 36324)
Steven N. Williams (SBN 175489)
COTCHETT, PITRE & MCCARTHY
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
T: (650) 697-6000
F: (650) 697-0577

- 3 -    STIPULATION AS TO VIOLATION BY DEFENDANT
VIRGIN ATLANTIC AIRWAYS LTD.

Michael D. Hausfeld (*pro hac vice*)
Charles E. Tompkins (*pro hac vice*)
COHEN, MILSTEIN, HAUSFELD & TOLL,
P.L.L.C.
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC 20005
T: (202) 408-4600
F: (202) 408-4699

*Interim Co-Counsel for the Putative Plaintiff Class*

Charles E. Koob (SBN 47349)
Jonathan K. Youngwood (*pro hac vice*)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017-3954
T: (212) 455-2000
F: (212) 455-2502

*Counsel for Virgin Atlantic Airways Ltd.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IT IS SO ORDERED

Judge Charles R. Breyer

09/21/07

- 4 -                STIPULATION AS TO VIOLATION BY DEFENDANT
                     VIRGIN ATLANTIC AIRWAYS LTD.