# EXHIBIT D

Joseph W. Cotchett (36324)
jcotchett@cpmlegal.com
Steven N. Williams (175489)
swilliams@cpmlegal.com
Stuart G. Gross (251019)
sgross@cpmlegal.com
Matthew K. Edling (250940)
medling@cpmlegal.com
**COTCHETT, PITRE & McCARTHY**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA  94010
Telephone:  (650) 697-6000
Fax:(650) 697-0577

Michael D. Hausfeld (pro hac vice)
mhausfeld@cmht.com
Charles E. Tompkins (pro hac vice pending)
ctompkins@cmht.com
Andrea L. Hertzfeld (pro hac vice)
ahertzfeld@cmht.com
**COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C**
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC 20005
T: (202) 408-4600
F: (202) 408-4699

*Counsel for Plaintiffs and Settlement Class Counsel*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE INTERNATIONAL AIR TRANSPORTATION SURCHARGE ANTITRUST LITIGATION | Case No. M:06-cv-01793-CRB |
| | MDL No. 1793 |
| This Document Relates to: | **NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES** |
| ALL ACTIONS | |
| | **Date:** September 26, 2008 |
| | **Time:** 10:00 A.M. |
| | **Judge:** Hon. Charles R. Breyer |
| | **Courtroom :** Courtroom 8, 19th Floor |

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that at 10:00 a.m. on September 26, 2008, Plaintiffs and the class will, and hereby do, move before the Honorable Charles R. Breyer, United States District Judge, at the United States Courthouse, 450 Golden Gate Avenue, San Francisco, California, for attorneys' fees and reimbursement of litigation expenses in the amount of $23 million, to be paid by Settling Defendants to Settlement Class Counsel from funds separate from any consideration paid to Settlement Class Members. This motion is brought pursuant to Fed. R. Civ. P. 23(h), 54(b) and 54(d)(2) and pursuant to the motion for administrative relief pursuant to Local Civil Rule 7-11 filed with the Court on August 22, 2008. For the Court's convenience, a courtesy copy of that motion and proposed order is being provided to the Court concurrently with this motion.

This motion is made on the grounds that such attorneys' fees and litigation expenses are fair and reasonable in light of Settlement Class Counsel's successful efforts in achieving a remarkable recovery on behalf of Settlement Class Members.

This motion is based upon this Memorandum of Points and Authorities in Support thereof; the Declaration of Joseph W. Cotchett in Support of Plaintiffs' Motion for Attorneys' Fees and Reimbursement of Litigation Expenses; Declaration of Charles E. Tompkins in Support of Plaintiffs' Motion for Attorneys' Fees and Reimbursement of Litigation Expenses; the Order granting preliminary approval of settlement; the records, pleadings, and papers filed in this action; and upon such argument as may be presented to the Court at the hearing on this motion.

///

///

///

NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES
Case No. M:06-cv-01793-CRB

Defendants, who have agreed to pay the requested attorneys' fees and litigation costs separate from consideration paid to the class, do not oppose this motion.

Dated: September 5, 2008                    **COTCHETT, PITRE & McCARTHY**
**COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.**
**COHEN, MILSTEIN, HAUSFELD & TOLL, L.L.P.**


By: ___/s/ *Joseph W. Cotchett*___
JOSEPH W. COTCHETT
*Counsel for Plaintiffs and Settlement Class Counsel*


By: ___/s/ *Charles E. Tompkins*___
Charles E. Tompkins
*Counsel for Plaintiffs and Settlement Class Counsel*

NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES
Case No. M:06-cv-01793-CRB

## TABLE OF CONTENTS

Page

I. INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . 3

    A. Overview Of The Litigation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        1. Investigation and Discovery by Plaintiffs . . . . . . . . . . . . . . . . . . . . . . 5

            a. Expert Analyses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

            b. Documents Reviewed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    B. Settlement History. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    C. The Terms Of The Settlement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

III. ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    A. The Proposed Fee and Reimbursement Is Fair And Reasonable. . . . . . . . . 9

        1. Settlement Class Counsel Are Entitled To Reasonable Attorneys' Fees
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        2. The Proposed Fee and Reimbursement Is Fair And Reasonable When Assessed Against the Percentage-Of-The-Recovery Approach . . . . . . . . 10

        3. Ninth Circuit Courts Customarily Award Fees Between 25% and 30% Of The Benefit Received By the Class. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

            a. Benchmark In This District Is Closer to 30%. . . . . . . . . . . . . . 13

        4. Settlement Class Counsel Are Entitled To Attorneys' Fees Falling Within the Benchmark Range. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

            a. Settlement Class Counsel Has Achieved Remarkable Results. . . 14

            b. Settlement Class Counsel's Skill And Dedication Caused These Remarkable Results To Be Achieved. . . . . . . . . . . . . . . . . . . . 18

            c. Settlement Class Counsel's Skill And Dedication Allowed Them To Overcome Significant Risks In This Litigation. . . . . . . . . . . . . . 19

        5. The Proposed Fee and Reimbursement Is Fair and Reasonable When Compared to the Total Settlement Consideration. . . . . . . . . . . . . . . . . . 20

    B. Plaintiffs' Attorneys Should Be Reimbursed For Litigation Expenses. . . . . . 23

IV. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**
Case No. M:06-cv-01793-CRB

i

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Aamco Automatic Transmission, Inc. v. Tayloe*, 82 F.R.D. 405 (E.D. Pa 1979)............... 13

*Blum v. Stenson*, 465 U.S. 886 (1984) ....................................... 10, 14

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)................................. 10, 11

*Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991)..................... 11

*Cosgrove v. Sullivan*, 759 F. Supp. 166 (S.D.N.Y. 1991) . ...................... 23

*Fischel v. Equitable Life Ins. Co.*, 307 F.3d 997 (9th Cir. 2002)........................... 13

*Florida v. Dunne*, 915 F.2d 542  (9th Cir. 1990)................................. 11

*Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 741 F.  Supp. 84 (S.D.N.Y. 1990). ... 24

*Greene v. Emersons, Ltd.*, [1987 Binder] Fed. Sec. L. Rep. (CCH) ¶ 93,263 (S.D.N.Y. 1987). . 13

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).  ........................ 11

*Harris v. Intel Corp.*, No. C-00-1528-CW (N.D. Cal. July 15, 2003)...................... 13

*Hawaii v. Standard Oil Co.*, 405 U.S. 251 (1972)................................. 1

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ................................. 14

*Howes v. Atkins*, 668 F. Supp. 1021 (E.D. Ky. 1987) ............................. 13

*In re Activision Sec. Litig.*, 723 F. Supp. 1373 (N.D. Cal. 1989) ....................... 12

*In re Allstar Inns Sec. Litig.*, 1991 U.S. Dist. LEXIS 20402 (S.D.N.Y. Nov. 20, 1992) ....... 13

*In re Art Materials Antitrust Litig.*, 100 F.R.D. 367 (N.D. Ohio 1983) .................. 18

*In re Bextra and Celebrex Marketing Sales Practices and Product Liability Lit.*, No. 05-1699-CRB, 2006 U.S. Dist. LEXIS 10902  (N.D.Cal. Feb.  28, 2006)................... 24

*In re California Microwave, Inc. Sec. Litig.*, Master File No. C-95-4009-CW (N.D. Cal. Mar. 23, 1998)................................................. 13

*In re Cement & Concrete Antitrust Litig.*, 1981-1 Trade Cases (CCH) ¶ 63,892 (D. Ariz. 1981) ................................................. 18

*In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 326-27 (E.D.N.Y. 1993)................. 13

*In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303 (C.D. Cal.1977). ............... 18

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES
Case No. M:06-cv-01793-CRB                                                                ii

*In re Franklin Nat'l Bank Sec. Litig.*, [1980 Binder] Fed. Sec. L. Rep. (CCH) ¶ 97,571
(E.D.N.Y. June 24, 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Ikon Office Solutions, Inc. Sec. Litig.*, 199 U.S. Dist. LEXIS 19077 (E.D. Pa. 2000) . . . . . 14

*In re Informix Corp. Sec. Litig.*, No. 97-1289 (N.D. Cal., Nov. 23, 1999). . . . . . . . . . . . . . . . . 12

*In re Linerboard Antitrust Litig.*, 2004 U.S. Dist. LEXIS 10532 (E.D. Pa. June 2, 2004). . . . . . 18

*In re M.D.C. Holdings Sec. Litig.*, [1990 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶95,474
(S.D. Cal. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362 (N.D. Cal. 1996). . . . . . . . . . . . . . . . 24

*In re Melridge, Inc. Sec. Litig.*, No. 87-1426 (D. Ore., Mar 1, 1992, Nov. 1, 1993 and Apr. 15,
1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Nat'l Health Labs. Sec. Litig.*, Nos. 92-1949 & 93-1694 (S.D. Cal., Aug. 15, 1995) . . . . . 12

*In re New York City Mun. Sec. Litig.*, [1984 Binder] Fed. Sec. L.Rep. (CCH) ¶ 91,419 (S.D.N.Y.
Mar. 28, 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Pacific Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706 (E.D. Pa. 2001) . . . . . . . . . . . . . . . . . . . 23

*In re Secure Computing Corp. Sec. Litig.*, Master File No. C-99-1927-CW (N.D. Cal. Nov. 19,
2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Sodium Gluconate Antitrust Litig.*, No. C-97-4142 (N.D. Cal. 1999) . . . . . . . . . . . . . . . . 12

*In re Sorbates Direct Purchaser Antitrust Litig.*, No. 98-4886 (N.D. Cal., Nov. 20, 2000) . . . . . 12

*In re Spectrian Corp. Sec. Litig.*, Master File No. C-97-4672-CW (N.D. Cal. Nov. 6, 2000). . . . 13

*In re Vitamins Antitrust Litig.*, 2001 WL 34312839 (D.D.C. July 16, 2001) . . . . . . . . . . . . . . . 14

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291(9th Cir. 1994). . . . . . . . . . . . . . 11

*J. N. Futia Co. v. Phelps Dodge Indus., Inc.*, 1982 U.S. Dist. LEXIS 15261 (S.D.N.Y. Sept. 17,
1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Lobatz v. U.S. West Cellular of Calif., Inc.*, 222 F.3d 1142. . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Malanka v. Castro*, [1990-91 Binder] Fed. Sec. L. Rep. (CCH) ¶ 95,657 (D. Mass. 1990) . . . . . 13

*Minnesota Min. & Mfg. Co. v. New Jersey Wood Finishing Co.*, 381 U.S. 311 (1965). . . . . . . . . 1

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989) . . . . . . . . . . . . . . . 10, 13

*Powers v. Eichen*, 229 F.3d 1249 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . 11

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**
Case No. M:06-cv-01793-CRB

iii

*Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990). . . . . . 11, 23

*Thornberry v. Delta Air Lines*, 676 F. 2d 1240 (9th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . 24

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1330, 1377 (9th Cir. 1993). . . . . . . . . . . . . . . . . . . . 14

*Van Vranken v. ARCO*, 901 F.Supp. 294 (N.D. Cal. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Vincent v. Hughes Air West, Inc.*, 557 F.2d 759 (9th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . 10

*Vizcaino v. Microsoft*, 290 F.3d 1043 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . 11, 12, 14, 18, 20

*Vizcaino v. Waite*, 537 U.S. 1018 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Waters v. International Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999). . . . . . . . . . . . . 11

*Weiss v. Mercedes-Benz of N. Am.*, 899 F. Supp. 1297 (D.N.J. 1995) . . . . . . . . . . . . . . . . . . . 23

*Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026 (9th Cir. 1997). . . . . . . . . . . . . 11

*Yeagley v. Wells Fargo & Co.*, No. 05-403 CRB, 2008. . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100 (1969). . . . . . . . . . . . . . . . . . . . . 1

*Zinman v Avemco Corp.*, 1978 U.S. Dist. LEXIS 20079 (E.D. Pa. Jan. 18, 1978). . . . . . . . . . . . 13

*Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . 10

**Statutes and Rules**

42 U.S.C. § 1988. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Antitrust Criminal Penalty Enhancement and Reform Act of 2004, Pub. L. No. 108-237, 11 Stat. 665 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Evid. 408. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**Other Authorities**

6 *Newberg on Class Actions*, § 18.1 (4th ed. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

D. Martin, V. Juneja, T. Foster, F. Dunbar, *Recent Trends IV: What Explains Filings and Settlements in Shareholder Class Actions?* 12-13 (NERA Nov. 1996). . . . . . . . . . . . . . . . . . . . . 12

T. Willging, L. Hooper & R. Niemic, *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules*, 147 (1996). . . . . . . . . . . . . . . 13

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiffs and Settlement Class Representatives Kambiz Pahlavan, Frederick Waters, Maureen Ann Waters and Deborah Holley and Settlement Class Counsel respectfully submit this Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Attorneys' Fees and Reimbursement of Litigation Expenses.

This case exemplifies the goals of class action litigation. It is the successful prosecution of an illegal price-fixing conspiracy affecting the United States and the United Kingdom. Settlement Class Representatives through Settlement Class Counsel successfully pursued the claims of tens of thousands of travelers affected by the conspiracy, most of which were too small to justify pursuing individually. The results were extraordinary and constitute a landmark in antitrust jurisprudence. Through the creativity and diligence of Settlement Class Counsel, a settlement was reached that provides relief to claimants both in the United States and in the United Kingdom, implemented through an exceptional notice program designed to ensure notice for class members in both countries.

It is precisely this kind of result that Congress intended when it provided, in the Sherman Act, for private actions by persons injured by illegal anti-competitive conduct.

> Where the consuming public is harmed by price-fixing activity, the public interest demands redress . . .. Sometimes a class-action lawsuit is the only way in which consumers would know of their rights at all, let alone have a forum for their vindication.

6 *Newberg on Class Actions*, § 18.1 (4th ed. 2002). Indeed, the Supreme Court has repeatedly recognized that Congress has placed heavy reliance on private litigants for enforcement of the antitrust laws. *See, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100 (1969); *Minnesota Min. & Mfg. Co. v. New Jersey Wood Finishing Co.*, 381 U.S. 311 (1965). "Every violation of the antitrust laws is a blow to the free-enterprise system envisaged by Congress." *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 262 (1972). Congress chose to ward off such blows by empowering persons injured in their business and property to pursue such violations "as 'private attorneys general,'" *id.*, using the Fed. R. Civ. P. 23 class mechanism "to combine their limited

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES
Case No. M:06-cv-01793-CRB

1

resources to achieve a more powerful litigation posture." *Id.* at 266. That is precisely what occurred here.

For their work, Settlement Class Counsel request and Defendants have agreed to pay, subject to the Court's approval, the sum of $23 million in attorneys' fees and reimbursement of litigation expenses ("Proposed Fee and Reimbursement"), a sum which is separate and apart from the settlement consideration obtained by Settlement Class Counsel for Settlement Class Members. The Proposed Fee and Reimbursement is fair, reasonable, and well-earned given the remarkable results that Settlement Class Counsel achieved on behalf of members of the classes (collectively, "Settlement Class Members") through settlements (collectively, "Settlement") reached with Defendants British Airways Plc ("BA") and Virgin Atlantic Airways, Ltd. ("Virgin Atlantic") (collectively "Settling Defendants"), and the efforts and risks associated therewith.

The Proposed Fee and Reimbursement was negotiated by Settlement Class Counsel and counsel for Settling Defendants in a wholly separate process from negotiation of the consideration to be paid to Settlement Class Members. Cotchett Dec., ¶ 9. The negotiations were mediated by Kenneth R. Feinberg, Esq. Settling Defendants do not oppose this motion. *Id.*, ¶ 10.

The Proposed Fee and Reimbursement is to be paid by Settling Defendants from funds wholly separate from the substantial consideration achieved for Settlement Class Members. Furthermore, the $23 million Proposed Fee and Reimbursement is a reasonable sum however one compares it to the total settlement consideration achieved for the direct benefit of Settlement Class Members – $60 million to be paid to U.S. Settlement Class Members, with unclaimed funds being paid to charity, plus up to a further £73.5 million (approximately $130 million at current exchange rates) available to U.K. Settlement Class Members on a claims made basis. Settlement Class Counsel, through remarkable and skillful work, achieved an excellent result for all Settlement Class Members on both sides of the Atlantic that strongly justifies approval of the Proposed Fee and Reimbursement.

Settlement Class Counsel also advanced all the litigation expenses required to achieve these results, and these expenses should be reimbursed from the Proposed Fee and Reimbursement. All

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES
Case No. M:06-cv-01793-CRB

2

of the expenses submitted by Settlement Class Counsel warrant approval by the Court. This includes both litigation expenses paid directly by individual firms and litigation expenses paid from a litigation fund established by Settlement Class Counsel into which plaintiffs' counsel contributed ("Litigation Fund"). *See* Declaration of Joseph W. Cotchett in Support of Settlement Class Counsels' Motion for Attorneys' Fees and Reimbursement of Litigation Expenses ("Cotchett Dec.") ¶ 11; Declaration of Charles Tompkins In Support of Settlement Class Counsels' Motion for Attorneys' Fees and Reimbursement of Litigation Expenses ("Tompkins Dec."). All of these expenses were reasonable and necessary to the prosecution of this action and are of the type and amounts routinely approved by courts for reimbursement.

Accordingly, Plaintiffs and Settlement Class Representatives respectfully submit that the Court should grant their Motion for Attorneys' Fees and Reimbursement of Litigation Expenses.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    Overview Of The Litigation

This is a class action originally brought on behalf of persons who purchased long-haul passenger air transportation between the U.K. and the U.S. or a third country during the period between May 1, 2004 and February 28, 2006 from the Settling Defendants, as well as United Airlines Inc., AMR Corporation and American Airlines, Inc. (collectively "Defendants"). *See* First Consolidated Amended Complaint ("FCAC"), ¶ 17. The case alleged that Defendants unlawfully fixed prices for air passenger transportation, including, *inter alia*, concertedly through the manipulation of the fuel surcharges ("Fuel Surcharges") and other surcharges charged to U.S. and U.K. Purchasers ("Conspiracy"). FCAC, ¶¶ 29-71.

In March 2006, Virgin Atlantic approached the United States Department of Justice ("DOJ") regarding participation in the DOJ's Corporate Amnesty Program and the U.K. Office of Fair Trading ("OFT") regarding participation in the OFT's Corporate Leniency Program ("Programs"), as to Virgin Atlantic's involvement in the Conspiracy. FCAC, ¶ 44. Soon thereafter, the OFT and the DOJ's Antitrust Division initiated investigations of the underlying conduct and accepted Virgin Atlantic into their respective Programs. *See* Docket No. 162, Stipulation As To Violation By

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY

NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES
Case No. M:06-cv-01793-CRB                                                                                     3

Defendant Virgin Atlantic Airways ("Virgin Atlantic Stipulation"); Virgin Atlantic Settlement Agreement (submitted, with the BA Settlement Agreement, as Exhibits to Plaintiffs' Motion for Preliminary Approval, Docket No. 218), p. 1.

In this action, Virgin Atlantic stipulated to the following:  1) from August 2004 through January 2006, Virgin Atlantic increased Fuel Surcharges seven times and decreased Fuel Surcharges once, Virgin Atlantic Stipulation ¶ 1;[1] 2) prior to each of these changes, Virgin Atlantic personnel communicated with BA personnel and reached agreements regarding the changes, *id.*, ¶¶ 2-3. Virgin Atlantic further admitted that these communications and agreements were in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and the United Kingdom's Competition Act 1998, Chapter 41, 9 November 1998. *Id.*, ¶¶ 3-4. The Virgin Atlantic Stipulation explicitly disclaimed any admission that: 1) the Court or any other court in the U.S. has jurisdiction over any claims regarding the admitted to conduct which arises under non-U.S. laws, *id.* ¶ 5; or 2) that any person was injured by the admitted to conduct, *id.*, ¶ 6.

On August 13, 2007, BA pled guilty to criminal charges brought by the DOJ under Section 1 of the Sherman Act, 15 U.S.C. § 1.  Count 2 of the Information to which BA pled guilty alleges the same conduct admitted to by Virgin Atlantic in the Virgin Atlantic Stipulation. *See* Request for Judicial Notice ("RJN"), Docket No. 222, Ex. A ("BA Plea Agreement"), ¶¶ 3, 4(b).  In accordance with the recommendations in the Plea Agreement, the District Court of the District of Columbia assessed a $300,000,000.00 fine against BA, $100,000,000.00 of which was attributable to BA's involvement in the Conspiracy. *See, id.*, ¶ 8(d); RJN, Ex. B ("Judgment"). The BA Plea Agreement states explicitly that these amounts do not reflect restitution for customers who paid the Fuel Surcharges and leaves pursuit of such restitution to the instant action. *See* BA Plea Agreement, ¶ 11.

---

[1]  The exact dates of increase are August 11, 2004, October 14, 2004, March 24, 2005, June 27, 2005, September 7, 2005, and January 9, 2006.  The decrease occurred on November 21, 2005.

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES
Case No. M:06-cv-01793-CRB                                                                                           4

In August 2007, BA also admitted its participation in the Conspiracy to the OFT and agreed to pay a civil penalty for such participation. BA Settlement Agreement, p. 2.

On December 18, 2006, the Court appointed Cotchett, Pitre, Simon & McCarthy (now known as Cotchett, Pitre & McCarthy ("CPM")), and Cohen Milstein, Hausfeld & Toll ("CMHT") Interim Class Counsel. *See* Docket No. 42. On July 9, 2007, Plaintiffs filed the FCAC. *See* Docket No. 99. On April 25, 2008, the Court granted preliminary approval of the settlement and associated notice program. *See* Docket Nos. 243, 244.

### 1. Investigation and Discovery by Plaintiffs

The stipulation with Virgin Atlantic was the result of extensive negotiation between Settlement Class Counsel and counsel for Virgin Atlantic. Cotchett Dec., ¶ 8. Based on the admissions made by Virgin Atlantic in the Stipulation and BA in its Plea Agreement, Settlement Class Counsel focused their discovery on gathering and analyzing facts necessary to show: (1) that the Conspiracy injured Settlement Class Members and (2) the extent of such injury. Neither the Virgin Atlantic Stipulation nor the BA Plea Agreement addressed the extent to which customers of Virgin Atlantic and BA were economically injured as a result of the Conspiracy. Indeed, Virgin Atlantic and BA continue to maintain that their conduct in connection with the Conspiracy "did not cause any consumer harm and that [they] have good defenses with respect to Plaintiffs' claim for damages." BA Settlement Agreement at p. 2; Virgin Atlantic Settlement Agreement at p. 2. Thus, Plaintiffs focused their investigation, discovery, and analyses on gathering and analyzing the information necessary to: (1) establish that the Conspiracy increased the total prices which customers of Virgin Atlantic and BA paid for long-haul tickets sold in the U.S. and the U.K.; (2) establish how U.S. Purchasers and U.K. Purchasers suffered antitrust injury as a result; and (3) the quantum of damages suffered. This investigation and discovery had two major components: expert analyses and document review.

### a. Expert Analyses

The Settlement was achieved through a formal mediation process with Kenneth R. Feinberg, Esq. Both Plaintiffs and Settling Defendants retained consulting experts who created damage

⊕
LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

estimates based on the analyses of data provided by the Settling Defendants. Cotchett Decl., ¶ 12. The reports prepared by each expert were shared among the parties. *Id.* While the details of the analyses conducted by the parties' respective consulting expert economists are protected by the terms of the mediation agreement and Fed. R. Evid. 408 and cannot be disclosed, an overview of their approaches and conclusions is set forth below. *Id.*

Plaintiffs retained Dr. Russell L. Lamb of Econ One Research as their consulting expert to analyze the economic damages resulting from the Conspiracy. *Id.*, ¶ 13. Dr. Lamb and his staff spent over 1,500 hours analyzing extensive data provided to Dr. Lamb by the Settling Defendants. *See id.*, ¶ 13. The data provided to Dr. Lamb included information on more than 17 million Virgin Atlantic flight coupons and over 70 million BA flight coupons. *Id.*[2] Using the data provided, Dr. Lamb performed a multiple regression analysis to calculate the damages attributable to the Settling Defendants' conspiratorial conduct. *Id.*, ¶ 13. Dr. Lamb's economic analysis was also informed by his discussions with the economic experts retained by the Settling Defendants regarding their position on appropriate damage modeling. Based upon his analysis of the data, Dr. Lamb has concluded that the Settlement Amounts being paid by both Virgin Atlantic and BA amount to "essentially all of the damages owed class members as a result of the alleged misconduct in this matter, i.e, essentially all of the overcharges arising from the alleged misconduct." *Id.*, ¶ 13.

Settling Defendants' experts also conducted regression analyses based on data provided to them by Settling Defendants. Experts for both Virgin Atlantic and BA concluded that the Conspiracy had little or no measurable impact on ticket prices, and thus no purchasers suffered antitrust injury. Cotchett Decl., ¶ 14. The parties exchanged the analyses of their respective experts, and both experts presented their analyses and results to Kenneth R. Feinberg, Esq. the neutral mediator selected by the parties to mediate negotiations, and were extensively questioned by Mr. Feinberg regarding their analyses and results. Following this session, further mediation sessions

---

[2]    "Flight coupon" or "coupon" is an airline industry term which refers to that portion of a ticket which entitles its holder to travel to a particular destination. Thus, for example, a round-trip ticket between New York and London will include two coupons: one for travel from New York to London and another for travel from London to New York.

NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES
Case No. M:06-cv-01793-CRB                                                                                    6

were held among the parties, their economic consultants, and the mediator to exchange views and discuss and refine the parties' analyses and calculations. *Id.*, ¶ 14.

### b.    Documents Reviewed

In addition to the analysis conducted by their own expert and those of the experts of Settling Defendants, Plaintiffs had access to, and thoroughly reviewed, the documents that Virgin Atlantic and BA produced to the DOJ. *Id.*, ¶ 10. BA and Virgin produced over 139,000 pages of documents for Plaintiffs' review. *Id.*

### B.    Settlement History

The Settlement is the product of vigorous, arms'-length, hard-fought negotiations which took more than a year. Cotchett Decl., ¶ 15. Negotiations began in January of 2007, soon after CPM and CMHT were appointed Interim Class Counsel. Cotchett Decl., ¶ 15. Until the Settlement was preliminarily approved by the Court, no discussions were had among the parties regarding the amount of plaintiffs' attorneys' fees, *id.*, and the Settlement explicitly provides that plaintiffs' attorneys' fees, as well as litigation expenses and costs related to class notice, will be paid by Settling Defendants *over and above* the refund payments to Settlement Class Members. Virgin Atlantic Settlement Agreement, ¶¶ 4.4, 15; BA Settlement Agreement, ¶¶ 4.4, 15.

Not surprisingly, given Settling Defendants' financial responsibility for the notice program and Settlement Class Counsels' strong interest in encouraging participation in the Settlement through a vigorous notice program, negotiations over the format of the notice program also were hard-fought and extended. Cotchett Decl., ¶ 17. Ultimately, under the supervision of Mr. Feinberg, Settlement Class Counsel were able to secure Settling Defendants' agreement to a notice program designed and implemented by Katherine Kinsella of Kinsella/Novak that this Court referred to as "remarkable" and "a model." Proceeding Transcript, April 25 2008 ("TR(4/25/08")), at 7:12 to 7:13.

///

///

///

NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES
Case No. M:06-cv-01793-CRB                                                                                           7

## C.     The Terms Of The Settlement [3]

The Court has been similarly complimentary of the Settlement, *see* Transcript of Proceedings, March 28, 2008 ("TR (3/28/08)"), at 4:14 to 4:20, and for good reason. The Settlement represents an unprecedented resolution of claims of both U.S. and U.K. victims arising from a global price-fixing conspiracy. The Settlement resolves the claims of the Conspiracy's victims under both U.S. and U.K. law and provides for Settlement Class Members who submit valid claims to receive refunds of 33.3% of the Fuel Surcharges they paid on qualifying flights and 90 days of interest on such payments. *See* Virgin Atlantic Settlement Agreement, ¶¶ 10.1-10.4; BA Settlement Agreement, ¶¶ 10.1-10.4. Indeed, according to Plaintiffs' economic expert, the Settlement returns to Settlement Class Members substantially all of the amount that they were overcharged as a result of the Conspiracy. Cotchett Decl., ¶ 18. In addition, to account for BA's liability for treble damages in the United States pursuant to Section 1 of the Sherman Act, BA has agreed to pay an additional $1 million that will be available to Settlement Class Members in the U.S, who purchased tickets from BA to share on a pro-rata basis. *Id.*, ¶ 10.1.[4]   In total, the Settlement provides $60 million for refunds to Settlement Class Members in the U.S. and up to over £73.5 million (approximately $130 million) for refunds to Settlement Class Members in the U.K. *See* Virgin Atlantic Settlement Agreement, ¶¶ 10.1-10.4; BA Settlement Agreement, ¶¶ 10.1-10.4.

Furthermore, no portion of the consideration negotiated for members of the Settlement Class Members will be used to pay any attorneys' fees, expenses or has been used for any costs related to notification of members of the Settlement Classes or for administration of the Settlement. *See* Virgin Atlantic Settlement Agreement, ¶¶ 4.4, 15; BA Settlement Agreement, ¶¶ 4.4, 15.

---

[3]     For a detailed description of the terms of the Settlement, see Plaintiffs' Motion for Preliminary Approval of the Settlement, Docket. No. 218.

[4]     Because Virgin Atlantic has applied for amnesty under the Antitrust Criminal Penalty Enhancement and Reform Act of 2004, Pub. L. No. 108-237, 11 Stat. 665 (June 22, 2004), Virgin Atlantic's damage exposure is potentially limited to single damages attributable to Virgin Atlantic's own sales, rather than trebling or joint and several liability. Virgin Settlement Agreement, p. 1. Accordingly, no such provision is made in the Virgin Atlantic Settlement Agreement. Additionally, because treble damages are not available under U.K. law, no such treble damages payment is incorporated into either of the U.K. Settlement Amounts.

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES
Case No. M:06-cv-01793-CRB                                                                                8

Settlement Class Members may submit claims for refunds until December 31, 2012 and the deadline for objections is September 12, 2008. The record strongly indicates that Settlement Class Members are rightly supportive of the Settlement. To date, only two Settlement Class Members have submitted objections. The first asserts that unclaimed funds from the U.K. portion of the Settlement should not revert to Settling Defendants; thus, it raises no complaints as to results achieved by Settlement Class Counsel for Class Members who do submit claims. *See* Docket No. 249. The second appears based on a misunderstanding of the manner by which Settlement Class Members may submit claims: the manner in which this objector would like to submit a claim is actually permissible. *See* August 29, 2008 letter of Neil Silva regarding objection to settlement; Cotchett Dec., ¶ 19 (explaining that Mr. Silva may make claim). Furthermore, while the claims process has only been open for two months of its entire period of over four and half years, preliminary data shows significant response rates from Settlement Class Members on both sides of the Atlantic. See Cotchett Dec., ¶ 29.

## III.    ARGUMENT

### A.    The Proposed Fee and Reimbursement Is Fair And Reasonable

The Proposed Fee and Reimbursement of $23 million, which Settling Defendants do not oppose, is fair and reasonable. The amount – which was negotiated separately from negotiations over the amount of consideration paid to Settlement Class Members and is drawn from wholly separate funds – easily falls within the range allowed by courts in prior cases, even where, *unlike here*, the amount paid in fees to class counsel reduced the total consideration paid to Settlement Class Members. Furthermore, as the Court has already recognized, Settlement Class Counsel have done an exceptional job – in the face of tough opposition by opposing counsel and significant legal complexities – not only negotiating a settlement that provides Settlement Class Members with an outstanding and, in some ways, unprecedented recovery, but also designing the notice program and claims process in a way that ensures the greatest number of Settlement Class Members will receive the fruits of that recovery.

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES
Case No. M:06-cv-01793-CRB                                                                                      9

## 1.    Settlement Class Counsel Are Entitled To Reasonable Attorneys' Fees

Having created substantial benefits for Settlement Class Members, Settlement Class Counsel are entitled to recover reasonable attorneys' fees. The Supreme Court, in *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980), recognized that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *See also Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989) (well-settled that lawyer who helps create common fund should be allowed to share in the award); *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977) ("a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees").

Here, Settling Defendants have agreed to pay Settlement Class Counsels' attorneys' fees, reimburse Settlement Class Counsels' expenses, and pay for the costs of administration of the settlement, including the notice program and claims process, wholly separate and apart from payment of consideration to Settlement Class Members. The Ninth Circuit has permitted fee awards where defendants have agreed not to oppose fees up to a certain level as long as the fees were reasonable, even in situations, unlike here, where the class in question got no cash consideration. *See Lobatz v. U.S. West Cellular of Calif., Inc.*, 222 F.3d 1142, 1144 (9th Cir. 2000); *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1325 (9th Cir. 1999), *cert. denied*, 529 U.S. 1066 (2000).

### 2.    The Proposed Fee and Reimbursement Is Fair And Reasonable When Assessed Against the Percentage-Of-The-Recovery Approach

The Supreme Court has recognized that when determining how much of a common fund an attorney is entitled, generally, "a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 903 n.16 (1984) (contrasting the situation with an award of attorneys' fees under 42 U.S.C. § 1988, where "a reasonable fee . . . reflects the amount of attorney time reasonably expended on the litigation").

The Ninth Circuit has held that as long as the court's decision regarding which approach it uses is reasoned and the fee awarded is reasonable, the district court has the discretion to apply either

⊛
LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES
Case No. M:06-cv-01793-CRB                                                          10

the lodestar approach, the percentage-of-recovery approach, or some combination thereof. *See, e.g., Powers v. Eichen,* 229 F.3d 1249, 1256 (9th Cir. 2000). "[T]he fundamental principle" that should guide this decision is "that fee awards out of common funds be '*reasonable under the circumstances.*'" *In re Wash. Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1296 (9th Cir. 1994) (quoting with emphasis *Florida v. Dunne,* 915 F.2d 542, 545 (9th Cir. 1990)).[5]

The lodestar approach is used more often in "employment, civil rights and other injunctive relief class actions ... because there is no way to gauge the net value of the settlement or any percentage thereof." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1029 (9th Cir. 1998). Here, by contrast, there is a settlement fund with definite value. The percentage-of-recovery for fee computation purposes is based on the total amount of that fund made available. *Boeing,* 444 U.S. at 479-80; *Waters v. International Precious Metals Corp.,* 190 F.3d 1291, 1294 (11th Cir. 1999), *cert. denied,* 530 U.S. 1223 (2000); *Williams v. MGM-Pathe Communications Co.,* 129 F.3d 1026, 1027 (9th Cir. 1997); *Six (6) Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990).

The Ninth Circuit has made clear that while in certain circumstances a "lodestar check" can be appropriately used to adjust upward or downward the fees that an attorney would receive under the percentage-of-recovery approach, that holding is not meant "to imply that class counsel should necessarily receive a lesser fee for settling a case quickly." *Vizcaino v. Microsoft,* 290 F.3d 1043, 1051 n. 5 (9th Cir.), *cert. denied sub nom. Vizcaino v. Waite,* 537 U.S. 1018 (2002). Indeed the Court recognized that speedy settlement is often in the class' interest and that application of the lodestar method can create a contrary incentive for inefficiency. *Id.*

If the Court were to apply the percentage-of-recovery approach here to determine the reasonableness of the agreed Proposed Fee and Reimbursement, under this approach the Proposed Fee and Reimbursement is reasonable. The following sections discuss, first, the precedent in the

---

[5]    *Compare, e.g., Swedish Hosp. Corp. v. Shalala,* 1 F.3d 1261, 1268-71 (D.C. Cir. 1993) (establishing percentage-of-recovery as the only way to compute attorneys fees paid from a common fund); *Camden I Condominium Ass'n v. Dunkle,* 946 F.2d 768, 773-75 (11th Cir. 1991) (same, discussing *inter alia* supportive conclusions by the Third Circuit Task Force).

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**
Case No. M:06-cv-01793-CRB                                                                                    11

Ninth Circuit and this District that establish a benchmark reasonableness of attorneys' fees equaling between 25% and 30% of the whole common fund. It then discusses the factors that support use of this benchmark to determine the reasonableness of the Proposed Fee and Reimbursement. It concludes with an analysis that shows the Proposed Fee and Reimbursement falls in this range.

### 3.    Ninth Circuit Courts Customarily Award Fees Between 25% and 30% Of The Benefit Received By the Class

In the Ninth Circuit, it is customary in percentage-of-the-recovery cases that attorneys' fees are awarded based on 25% to 30% of the benefit received by the Class. *Paul, Johnson*, 886 F.2d at 272 (recommending 25% benchmark and noting that "[o]rdinarily . . . fee awards range from 20 percent to 30 percent of the fund created"). *See Vizcaino*, 290 F.3d at 1043 (Ninth Circuit surveyed fee awards from dozens of large common fund settlements, finding many in which fees of 20-30% were awarded).[6] *See also In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989) ("adoption of a policy of awarding approximately 30% of a class action settlement as attorneys' fees in the ordinary case is well-justified in light of the lengthy line of cases which find such an award appropriate and reasonable"). The Federal Judicial Center has issued a report indicating a mean rate of 27% and a median rate of 29% for fee awards in class action settlements approved in district courts in Northern California during the period studied. T. Willging, L. Hooper & R. Niemic, *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee*

---

[6]    Among the decisions in this Circuit in which fee awards of 25% or more were made are the following (some of which were cited in *Vizcaino*): *In re Informix Corp. Sec. Litig.*, No. 97-1289 (N.D. Cal., Nov. 23, 1999) (Breyer, J.) (30%:  $40 million fee, $137 million fund); *In re Sorbates Direct Purchaser Antitrust Litig.*, No. 98-4886 (N.D. Cal., Nov. 20, 2000) (Legge, J.) (25%: $20 million fee, $82 million fund); *Van Vranken v. ARCO*, 901 F.Supp. 294 (N.D. Cal. 1995) (25%:  $19 million fee, $76 million fund); *In re Nat'l Health Labs. Sec. Litig.*, Nos. 92-1949 & 93-1694 (S.D. Cal., Aug. 15, 1995) (Brooks, M.J.) (30%:  $19 million fee, $64 million fund); *In re Melridge, Inc. Sec. Litig.*, No. 87-1426 (D. Ore., Mar 1, 1992, Nov. 1, 1993 and Apr. 15, 1996) (Frye, J.) (37.1%:  $20 million fee, $54 million fund); *In re Sodium Gluconate Antitrust Litig.*, No. C-97-4142 (N.D. Cal. 1999) (Wilken, J.) (court awarded fees equaling 30% of $4.8 million recovery). Similarly, a 1996 analysis of 433 shareholder class actions conducted by National Economic Research Associates  concluded that "[r]egardless of case size, fees average approximately 32 percent of the settlement." D. Martin, V. Juneja, T. Foster, F. Dunbar, *Recent Trends IV:  What Explains Filings and Settlements in Shareholder Class Actions?* 12-13 (NERA Nov. 1996).

⊛
LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

*on Civil Rules*, 147 (1996), cited in *Fischel v. Equitable Life Ins. Co.*, 307 F.3d 997, 1009 (9th Cir. 2002).

### a. Benchmark In This District Is Closer to 30%

Over the last ten years, courts of this district have held that the benchmark for fee awards should be closer to 30%. Former Chief Judge Marilyn Patel, in *Activision*, stated just that: ***"the rate should be set at 30%."*** 723 F. Supp. at 1378 (emphasis added). Her rationale for that conclusion is as follows:

> The Ninth Circuit's opinion does not appear to foreclose, upon appropriate findings, the setting of a different benchmark, since it left "to the district court the task of determining what this reasonable percentage should be." [*Paul, Johnson*, 886 F.2d at 271.] The 25% was given for guidance and the court indicated it would approve use of that figure. As documented by the lengthy line of cases below, this court finds that in most recent cases the benchmark is closer to 30%. Therefore, the court finds that a figure of approximately 30% is substantially justified.
>
> This court's review of recent reported cases discloses that nearly all common fund awards range around 30% even after thorough application of either the lodestar or twelve-factor method.

*Id.* At 1377. Since *Paul, Johnson* and *Activision*, courts in this district have commonly awarded fees of 30% of the recovery plus expenses. For example, *see, e.g. Harris v. Intel Corp.*, No. C-00-1528-CW (N.D. Cal. July 15, 2003); *In re Secure Computing Corp. Sec. Litig.*, Master File No. C-99-1927-CW (N.D. Cal. Nov. 19, 2002); *In re Spectrian Corp. Sec. Litig.*, Master File No. C-97-4672-CW (N.D. Cal. Nov. 6, 2000); *In re California Microwave, Inc. Sec. Litig.*, Master File No. C-95-4009-CW (N.D. Cal. Mar. 23, 1998) (copies of these four Orders are attached at Exhibits C, D, E and F to the Cotchett Dec.).[7]

---

[7] Other courts have awarded well over 30% of the common fund as attorneys' fees. *See, e.g., Aamco Automatic Transmission, Inc. v. Tayloe*, 82 F.R.D. 405 (E.D. Pa. 1979) (awarding 43.87%); *Zinman v Avemco Corp.*, 1978 U.S. Dist. LEXIS 20079 (E.D. Pa. Jan. 18, 1978) (awarding 50%); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 326-27 (E.D.N.Y. 1993) (awarding 33.7%); *Malanka v. Castro*, [1990-91 Binder] Fed. Sec. L. Rep. (CCH) ¶ 95,657 (D. Mass. 1990) (awarding 33%); *Greene v. Emersons, Ltd.*, [1987 Binder] Fed. Sec. L. Rep. (CCH) ¶ 93,263 at 96,282 (S.D.N.Y. 1987) (awarding 46%); *Howes v. Atkins*, 668 F. Supp. 1021, 1024-27 (E.D. Ky. 1987) (awarding 40%); *In re New York City Mun. Sec. Litig.*, [1984 Binder] Fed. Sec. L.Rep. (CCH) ¶ 91,419 at 98,083 (S.D.N.Y. Mar. 28, 1984) (awarding 33%); *In re Franklin Nat'l Bank Sec. Litig.*, [1980 Binder] Fed. Sec. L. Rep. (CCH) ¶ 97,571 at 97,988 (E.D.N.Y. June 24, 1980) (awarding 34%); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 199 U.S. Dist. LEXIS

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES
Case No. M:06-cv-01793-CRB                                                                    13

**4.      Settlement Class Counsel Are Entitled To Attorneys' Fees Falling Within the Benchmark Range**

Settlement Class Counsel are entitled to attorneys' fees in an amount that falls within the benchmark range typically awarded by Courts in this District, on the basis of several factors, including: (a) the extraordinary recovery that Settlement Class Counsel achieved on behalf of the Settlement Class Members; (b) the skill that was required of them to reach that result; and (c) the risk that Settlement Class Counsel took on in pursuing the case. The Ninth Circuit has recognized the relevance of all these factors in determining the reasonableness of fees to class counsel, and all of them point strongly towards the reasonableness of the Proposed Fee and Reimbursement.

**a.      Settlement Class Counsel Has Achieved Remarkable Results**

Settlement Class Counsel achieved remarkable results on behalf of Class Members, a factor which courts have consistently recognized as a major factor, if not the most important factor, to be considered in making a fee award. *See, e.g, Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"), *superseded by statute on other grounds.* The Ninth Circuit has confirmed that "[e]xceptional results are a relevant circumstance" in deciding a fee award in common fund cases. *Vizcaino,* 290 F.3d at 1048 (citing *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1330, 1377 (9th Cir. 1993), *cert. denied,* 512 U.S. 1220 (1994) (it is proper to consider plaintiffs' counsel's "expert handling of the case")).

In several hearings, in this case and another, the Court has recognized the exceptional results that Settlement Class Counsel have achieved on behalf of Settlement Class Members. In a hearing

---

19077 (E.D. Pa. 2000) (awarding 30%); *In re Vitamins Antitrust Litig.,* 2001 WL 34312839 at *10 (D.D.C. July 16, 2001) (awarding 34% of about a $360 million fund). The Proposed Fee and Reimbursement are also reasonable when compared to customary private contingency fee agreements. *See Blum,* 465 U.S. at 903 ("[i]n tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery."); *In re M.D.C. Holdings Sec. Litig.,* [1990 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶95,474 at 97,490 (S.D. Cal. 1990) ("[i]n private contingent litigation, fee contracts have traditionally ranged between 30% and 40% of the total recovery.") As noted in *Vizcaino,* while evidence of such private agreements is in no way determinative, it can be "somewhat probative of the fee award's reasonableness." 290 F.3d at 1050.

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

in this case held on March 28, 2008, the Court described its impression of the results Settlement Class Counsel achieved and the likely reaction of Settlement Class Members to them this way:

> You know, I just expect everybody to opt in. It looked like a good settlement. It looked like the **parties worked hard and they achieved a good settlement**. And it was a **remarkable settlement in an number of ways** because it embraced a jurisdiction that there's some issue as whether I have jurisdiction over. But, you know, it looked like a good settlement.

TR(3/28/08), at 4:14 to 4:20 (emphasis added). Similar sentiments were voiced by the Court regarding the Settlement in a hearing in an unrelated case:

> I've been **very impressed with the work** that's been done. I've seen a small bit of it. So my guess is that a lot of work was done in connection with the resolution of that case . . .

Transcript of Proceedings, *In re Transpacific Passenger Air Transport Antitrust Lit.*, MDL No. 1913, March 28, 2008, at 12:25 to 13:2 (emphasis added).

Settlement Class Counsel respectfully submits that the Court was correct in these determinations. The settlement provides for BA and Virgin Atlantic, together, to pay over $60 million, plus interest, to resolve claims by Settlement Class Members that purchased qualifying tickets in the United States and make available over £73.5 million (or approximately $130 million at current exchange rates), plus interest, to satisfy claims by Settlement Class Members that purchased qualifying tickets in the United Kingdom. BA Settlement Agreement, ¶ 10.1-10.4; Virgin Atlantic Settlement Agreement, ¶ 10.1-10.4. These amounts represent 33.3% of the total fuel surcharges imposed on qualifying tickets by BA and Virgin Atlantic during the class period and in the view of Plaintiffs' expert Dr. Russell Lamb, represent substantially the entire unlawful overcharge generated by Defendants' Conspiracy. *See* Affidavit of Dr. Russell L. Lamb, Dec., ¶ 9 [Doc. 221, submitted in support of preliminary approval of settlements; a true and correct copy of this declaration is submitted herewith as Exhibit H to the Cotchett Dec.]. *See also* BA Settlement Agreement, ¶¶ 1.28, 1.29; Virgin Atlantic Settlement Agreement, ¶¶ 1.28, 1.29.

Furthermore, no portion of the consideration negotiated by Settlement Class Counsel for Settlement Class Members will be used to pay any attorneys' fees or litigation expenses, and no part of it has been used to pay costs related to notification of Settlement Class Members. *See* Virgin

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES
Case No. M:06-cv-01793-CRB                                                                                    15

Atlantic Settlement Agreement, ¶¶ 4.4, 15; BA Settlement Agreement, ¶¶ 4.4, 15. The Proposed Fee and Reimbursement was negotiated in a wholly separate process, begun after negotiation of Settlement Class Member consideration and will be paid by Settling Defendants from wholly separate funds along with the Reimbursement of Expenses. As this Court has recognized, these amounts must be considered part of the common fund that Settlement Class Counsel achieved on behalf of Settlement Class Members. *See Yeagley,* 2008 U.S. Dist. LEXIS 5040, at *19. As a result of the separation of any payment of attorneys' fees, litigation expenses, or any costs related to administration of the Settlement from payment of consideration to Settlement Class Members, all Settlement Class Members who submit valid claims will receive 33.3% of the Fuel Surcharges they paid on qualifying flights. In the view of Plaintiffs' expert, this constitutes compensation for substantially all of the antitrust injury they suffered as a result of Defendants' Conspiracy.

The significance of this result is even more dramatic for those Settlement Class Members who purchased their tickets in the U.K. For such Settlement Class Members, the refunds provided by the Settlement represent an opportunity for reimbursement which, in all likelihood, would not otherwise exist given the relative inability of small purchasers to pursue the kinds of claims resolved by this lawsuit in the United Kingdom. That this unique opportunity allows Settlement Class Members in the U.K. to recover substantially all of the damages they suffered due to the Conspiracy makes it all the more remarkable.

However, the remarkableness of the results that Settlement Class Counsel achieved for Settlement Class Members is not limited to the amount of consideration Settlement Class Counsel negotiated on their behalf, but also the notice program created to ensure that Settlement Class Members were made aware of the consideration and took advantage of it. In fact, in the hearing for preliminary approval of the Settlement and approval of the notice program, the Court was effusive in its praise of the notice program:

I think the notice is remarkable in this case. I think it's a model...

TR(4/25/08), at 7:12 to 7:13.

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES
Case No. M:06-cv-01793-CRB

16

Turning back to the settlement, I want to applaud the parties for the notice. I mean it's amazing. You know, it's really good.

TR(4/25/08), at 9:22 to 9:24.

And I once again want to express my sincere appreciation of the notice. I mean, I was just extraordinarily impressed. The problem now with this type of notice is that we'll expect it in every case. Right? That's the problem.

TR(4/25/08), at 11:20 to 11:24.

It would be neither proper nor accurate for Settlement Class Counsel to take credit for the notice program without acknowledging the amazing work done on the program by its designer and implementer Katherine Kinsella of Kinsella/Novak, whom Settlement Class Counsel employed on behalf of Settlement Class Members at Settling Defendants' expense. Cotchett Decl., ¶ 20.

However, Settlement Class Counsel deserve credit for ensuring Kinsella's program *was* implemented. The thoroughness of the program was spurred by Settlement Class Counsel, who were focused on ensuring that all Settlement Class Members, especially those in the U.K. that were unfamiliar with U.S. class actions, would be properly notified of the nature of the action, their options in regards to the Settlement, and the availability of the refunds. *See* Cotchett Decl., ¶ 21. Furthermore, Settlement Class Counsel fought hard with Settling Defendants over the scope of the notice program which, under the Settlement Agreements, Settling Defendants had already agreed to pay for. *Id.*, ¶21. Settlement Class Counsel's diligence during these hard-fought negotiations resulted in not only a Settlement that provides remarkable recoveries for Settlement Class Members, but also a notice program that sets the new standard for providing notice in multiple nations so as to notify class members of a potential recovery's availability.

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES
Case No. M:06-cv-01793-CRB                                                                17

### b.    Settlement Class Counsel's Skill And Dedication Caused These Remarkable Results To Be Achieved

Settlement Class Counsel were able to achieve these remarkable results because of the skillfulness and dedication of the work they performed on behalf of Settlement Class Members, which also weighs heavily in favor of approving the Proposed Fee and Reimbursement. As courts have recognized in many instances, the quality of work done by class counsel, and the efficacy and dedication with which it was performed, should be compensated. *See, e.g., Vizcaino*, 290 F.3d at 1048; *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995); *In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977); *King Resources*, 420 F. Supp. at 634; *J. N. Futia Co. v. Phelps Dodge Indus., Inc.*, 1982 U.S. Dist. LEXIS 15261 (S.D.N.Y. Sept. 17, 1982). This case is no different.

This case, which alleged an antitrust conspiracy with victims in both the U.S. and U.K., raised a multitude of complex issues that Settlement Class Counsel were forced to overcome. Standard antitrust price-fixing conspiracy cases are notoriously complex and difficult to litigate. *See, e.g., In re Linerboard Antitrust Litig.*, 2004 U.S. Dist. LEXIS 10532, at *34 (E.D. Pa. June 2, 2004) ("antitrust class action is arguably the most complex action to prosecute") (quotations omitted); *In re Cement & Concrete Antitrust Litig.*, 1981-1 Trade Cases (CCH) ¶ 63,892 (D. Ariz. 1981) (recognizing "complexity and uncertainty" of legal and factual issues in antitrust cases); *In re Art Materials Antitrust Litig.*, 100 F.R.D. 367, 372 (N.D. Ohio 1983) ("plaintiffs would face a very complex, difficult and costly trial on the merits, pursuant to which success could not be guaranteed"). Here these complexities and difficulties were amplified and multiplied by the location of victims of the alleged Conspiracy on both sides of the Atlantic. Thus, Settlement Class Counsel were forced to address complicated issues such as the Court's jurisdiction to adjudicate the claims of Settlement Class Members in the U.K., the law that applied to such claims both substantively and procedurally in the class context, and how a settlement could be structured in manner that dealt with those issues.

As the Court recognized, Settlement Class Counsel successfully overcame these issues:

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

I had a sense [this case] was hard fought, that it was a complicated settlement and aggressively pursued by the defendant and plaintiff.

TR(4/25/08), at 4:22 to 4:23; *see also* TR(3/28/08), at 4:14 to 4:20.

The Court was correct. Settling Defendants are represented by some of the most skillful attorneys in the nation from two of its most prestigious law firms. Settlement Class Counsel fought vigorously with these counsel to overcome these complicated legal issues to design a settlement and notice program that rendered substantial benefits to Settlement Class Members on both sides of the Atlantic. *See* Cotchett Decl., ¶ 30. The law recognizes that application of such skill for such purposes justifies an award to Settlement Class Counsel of a percentage of the common fund achieved on behalf of the Class. *See Vizcaino,* 290 F.3d at 1048.

The work that Settlement Class Counsel performed on behalf of Settlement Class Members was not, however, limited to their vigorous and effective negotiation of the Settlement. From the outset, Settlement Class Counsel took pains to develop the facts to support a convincing case. Before the initial complaints were filed, Settlement Class Counsel began investigating what claims, if any, could be brought against the Settling Defendants. Cotchett Decl., ¶ 31. This work was supplemented by extensive work with an expert economist to determine the antitrust injury that Defendants' Conspiracy caused Settlement Class Members to suffer. *Id.,* ¶ 31. As is almost always the case in litigation such as this, Settling Defendants also each engaged an expert economist who reached results in conflict with those of the Settlement Class' expert. *Id.,* ¶ 31. Settlement Class Counsel vigorously fought with Settling Defendants in the face of these challenges to ensure that the significant antitrust injury identified by Settlement Class Counsel's expert was compensated by Settling Defendants.

c.     **Settlement Class Counsel's Skill And Dedication Allowed Them To Overcome Significant Risks In This Litigation**

Settlement Class Counsel faced significant risks in this litigation that they successfully overcame. The Ninth Circuit has identified risks such as those overcome by Settlement Class

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

Counsel as among the important factors to consider in determining the fairness of a fee. *See* *Vizcaino*, 290 F.3d at 1048; *Pacific*, 47 F.3d at 379.

As the Court recognized, the risks faced by Settlement Class Counsel went to fundamental issues such as the Court's jurisdiction. *See* TR(3/28/08), at 4:14 to 4:20. Settlement Class Counsel faced the strong possibility that Settling Defendants would move the Court to dismiss large portions of the Settlement Class Members' case on the grounds that the Court had no jurisdiction to entertain them. Settlement Class Counsel, nonetheless, persisted and were able to craft an almost unprecedented resolution of *all* the Settlement Class Members' claims. Similarly, Settlement Class Counsel were presented with the risk that the Settling Defendants could move to dismiss the damages claims of every member of the Settlement Class on the grounds that their economist concluded no antitrust injury had been suffered by any one of them. Again, Settlement Class Counsel persisted and overcame this risk on behalf of Settlement Class Members. Settlement Class Counsel also faced the risk that any trial of this action would result in a minimal jury award, should the jury credit Settling Defendants' economists, who opined that the Conspiracy had caused no damage to consumers in the either the U.S. or the U.K. This is just a small sampling of the risks Settlement Class Counsel overcame.

For all of these reasons, attorneys' fees to Settlement Class Counsel in the amount agreed with Defendants is fair and reasonable.

**5.     The Proposed Fee and Reimbursement Is Fair and Reasonable When Compared to the Total Settlement Consideration**

The Proposed Fee and Reimbursement of $23 million falls well within the Ninth Circuit's standard for fairness and reasonableness.

The settlement payments here comprise three parts. The first part is the $60 million that the Settling Defendants have agreed to pay U.S. Settlement Class Members, with any remainder allocated to *cy pres*. The second part is the approximately $130 million that Settling Defendants have made available to U.K. Settlement Class Members. The third part is the Proposed Fee and Reimbursement of $23 million that Settling Defendants have agreed, subject to the Court's approval,

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES
Case No. M:06-cv-01793-CRB                                                                            20

to pay directly to Settlement Class Counsel from funds separate and apart from consideration paid directly to Settlement Class Members.

Thus, with respect to the U.S. portion of the Settlement, the requested fees and reimbursement fall well within the range of attorneys fees and expenses authorized in this District Whatever assumptions one makes as to the number of U.K. Settlement Class Members who will submit valid claims by December 31, 2012, and the total U.K. settlement payments made, this sum is certainly justified in relation to the time and effort Settlement Class Counsel expended in securing the Settlement and its substantial potential monetary benefits to U.K. Settlement Class Members.

Settlement Class Counsel have every reason to believe that the amounts disbursed from the U.K. settlement fund will be substantial. Settlement Class Counsel fought vigorously and successfully for the claims process to be designed to encourage the maximum number of submitted claims possible. Cotchett Dec., ¶ 32. As a result, Settlement Class Members in the U.S. and U.K. have the ability to submit claims by regular mail to addresses in their respective countries, as well as through dedicated country-specific websites. *Id.*, ¶ 32. On both websites, Settlement Class Members have not one, but five options for submitting their personal information to make a claim. *See* Cotchett Dec., Ex. G (screen print of options available to Settlement Class Members online). Indeed, a special option, Option No. 5, was created for corporate Settlement Class Members so they could file a single claim for multiple travelers whose flights the corporate Settlement Class Member paid for. *Id.*, ¶ 32. In just the first three months of the claims period, which will continue for well over another four years, the response from Settlement Class Members in the U.K., particularly, has been remarkable. *Id.*, ¶ 29. During just this short period, almost 76,000 claims have been submitted by Settlement Class Members in the U.K., including 1,355 claims by corporate Settlement Class Members using the online Option No. 5 discussed above. *Id.*, ¶¶ 22-24. Excluding the latter type of claims, which likely are for numerous flights, and very conservatively estimating that each claim is for only one round trip flight,[8] claims for at least 74,645 round-trip flights have been

---

[8] Preliminary indications are that a great number of the claims are, and will be, for multiple round trip flights. *See, e.g.,* Cotchett Dec., ¶ 28 (correlating 76,165 coupons, or flight segments, with only that portion 22,826 claims of U.K. Settlement Class Members which used

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY

NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES
Case No. M:06-cv-01793-CRB                                                                    21

submitted by Settlement Class Members in the U.K. so far. Multiplying this number by the median refund amount available for claims by Settlement Class Members in the U.K. per round-trip – £12 or approximately $22.30 – already approximately $1.7 million has been claimed by Settlement Class Members in the U.K. Given the conservativeness of this estimate, the exclusion from it of likely large claims by corporate Settlement Class Members, and the relatively small part of the total claims period it reflects, Settlement Class Counsel believe that the total amount of consideration that will ultimately be claimed and received by Settlement Class Members in the U.K. will be in the tens of millions of pounds sterling.

Given all of the foregoing, it would, of course, be absurd to assign no value to the U.K. portion of the settlement when determining the reasonableness of the Proposed Fee and Reimbursement. Plaintiffs are aware that in *Yeagley*, this Court rejected an attempt by class counsel in the case to argue that the total value of the settlement, upon which the award of fees would be based, should ignore the claims-made quality of the settlement (as well as its questionable value for those who made claims) and instead consider only the amount the settlement would be worth if all eligible class members made claims. 2008 U.S. Dist. LEXIS 5040, at *19. The situation here is clearly distinguishable.

First of all, Settlement Class Counsel are not asking for the reasonableness of the Proposed Fee and Reimbursement to be assessed against the total potential recovery of all U.K. Settlement Class Members. As demonstrated above, the amount they seek chargeable to the U.K. component of the Settlement is a small portion of the total $23 million and takes into account the possibility that not all of the $130 million made available to Settlement Class Members in the U.K. may be claimed.

Second, unlike in *Yeagley*, where this Court referred to the settlement as "virtually worthless," 2008 U.S. Dist. LEXIS 5040, at *1, the consideration achieved for Settlement Class Members in the U.K. has great value. Already, due in no small part to the extraordinary notice program designed and implemented by Kinsella, indications are that very large numbers of

Option No. 1, which is among the most onerous in its information demands).

NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES
Case No. M:06-cv-01793-CRB                                                    22

Settlement Class Members in the U.K. will have submitted claims and received refunds by the time the period for submitting claims closes on December 31, 2012.

Finally, the situation here resembles that in *Six Mexican Workers*. As this Court recognized in *Yeagley*, the Ninth Circuit, in *Six Mexican Workers*, found it proper to consider the total possible consideration paid to class members in determining the appropriate fee to award, because "each class member had a calculable interest in the judgment, even if some of the class members could not be located and therefore never collected on their judgment." 2008 U.S. Dist. LEXIS 5040, at *20. Similarly, here each Class Member in the U.K. has a precisely identifiable interest in the Settlement: 33.3% of the fuel surcharge paid on a qualifying flight, plus interest.

For these reasons, Settlement Class Counsel respectfully submit that the Proposed Fee and Reimbursement of $23 million is fair and reasonable and should be approved by this Court.[9]

**B.    Plaintiffs' Attorneys Should Be Reimbursed For Litigation Expenses**

The foregoing argument makes no attempt to separate that portion of the Proposed Fee and Reimbursement that represents attorneys' fees from that representing reimbursement for litigation expenses. As has been demonstrated, the results achieved on behalf of Settlement Class Members and the work that was required to do so would more than justify $23 million in attorneys' fees alone. However, the $23 million does not *solely* represent attorneys' fees; it is also reimbursement of $800,242.54 in litigation expenses of Settlement Class Counsel and other plaintiffs' attorneys. These expenses were not only substantial, but were also necessary, fair and reasonable. Accordingly, it is proper that they be reimbursed by Settling Defendants out of the Proposed Fee and Reimbursement.

---

[9]    Settlement Class Counsel submit that based on the foregoing reasons the Proposed Fee and Reimbursement is fair and reasonable based on the percentage-of-recovery approach and reference to any sort of lodestar "cross-check" is unnecessary. However, even under such a cross-check the Proposed Fee and Reimbursement is fair and reasonable. [*See* Cotchett Dec., ¶ 34] *compare Weiss v. Mercedes-Benz of N. Am.*, 899 F. Supp. 1297, 1304 (D.N.J. 1995) (awarding fee that resulted in a multiplier of 9.3 times hourly rate), *aff'd*, 66 F.3d 314 (3d Cir. 1995); (awarding fee equal to 6.6 multiplier on $70 million recovery); *Cosgrove v. Sullivan*, 759 F. Supp. 166 (S.D.N.Y. 1991) (awarding fee equal to a multiplier of 8.84); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 736 (E.D. Pa. 2001) (recognizing that a "lodestar multiple in the range of 4.5 to 8.5" is "unquestionably reasonable" under the cross-check approach).

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES
Case No. M:06-cv-01793-CRB                                                    23

It is well established that "[a]n attorney who has created a common fund has a right to reimbursement" of reasonable and relevant litigation expenses. *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996); *see also Thornberry v. Delta Air Lines*, 676 F. 2d 1240, 1244 (9th Cir. 1982), *vacated on other grounds*, 461 U.S. 952 (1983); *In re Bextra and Celebrex Marketing Sales Practices and Product Liability Lit.*, No. 05-1699-CRB, 2006 U.S. Dist. LEXIS 10902 at *55 (N.D.Cal. Feb. 28, 2006); *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 741 F. Supp. 84, 86 (S.D.N.Y. 1990). Plaintiffs' counsel paid for the following categories of litigation expenses directly or through allocations of the Litigation Fund:

- **Court Fees, Service of Process Costs, Court Reporters' Fees and Transcript Costs.** *See* Cotchett Dec., ¶ 33, Ex. A (Declarations of Individual Firms); Tompkins Dec., Exh. 2;

- **Experts/Consultants.** Dr. Russell L. Lamb of Econ One Research performed analyses of the economic injury caused by the Conspiracy which were crucial to prosecuting and resolving this action. *Id.*, ¶ 13.

- **Mediation.** The Feinberg group, through Kenneth R. Feinberg, Esq. and his staff provided mediation services that played a key role in achieving the Settlement. *Id.*, ¶ 14.

- **Express Mail, Postage, Telephone/Fax.** Tompkins Dec., Exh. 2; Cotchett Dec., ¶ 33, Ex. A.

- **Travel: Airfare, Ground Travel, Meals, Lodging, Etc.** Travel was necessary for meetings with co-counsel, experts and witnesses, document reviews, mediation sessions, and court hearings. Tompkins Dec., Exh. 2; Cotchett Dec., ¶ 33, Ex. A.

- **Computer Research.** Tompkins Dec., Exh. 2; Cotchett Dec., ¶ 33, Ex. A.

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES
Case No. M:06-cv-01793-CRB

24

- **Photocopies - Outside/In House**. Tompkins Dec., Exh. 2; Cotchett Dec., ¶ 33, Ex. A.

- **Document Depository/Production.** Tompkins Dec., Exh. 2; Cotchett Dec., ¶ 33, Ex. A.

- **Bank Charges for Litigation Fund Account.** Tompkins Dec., Exh. 2.

These litigation expenses were reasonable and necessary and are properly reimbursed by Settling Defendants.

## IV.    CONCLUSION

For the foregoing reasons, Settlement Class Counsel respectfully request that the Court grant Plaintiffs' Motion for Attorneys' Fees and Reimbursement of Litigation Expenses.

Dated: September 5, 2008                     **COTCHETT, PITRE & McCARTHY**
**COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.**
**COHEN, MILSTEIN, HAUSFELD & TOLL, L.L.P.**


By:  /s/ *Joseph W. Cotchett*
           JOSEPH W. COTCHETT
*Counsel for Plaintiffs and Settlement Class Counsel*


By:  /s/ *Charles E. Tompkins*
           Charles E. Tompkins
*Counsel for Plaintiffs and Settlement Class Counsel*


## ATTESTATION OF FILING

Pursuant to General Order No. 45, Section X(B) regarding signatures, I, Steven Williams, hereby attest that concurrence in the filing of this Notice of Motion and Motion has been obtained from Settlement Class Counsel.


By:  /s/ Steven Williams
           Steven Williams
*Counsel for Plaintiffs and Settlement Class Counsel*

# EXHIBIT E

Pages 1 - 10

United States District Court

Northern District of California

Before The Honorable Charles R. Breyer

In re: Transpacific )
Passenger Air )
Transportation Antitrust )
Litigation )
)
) No. C07-5634 CRB
)
_____)

San Francisco, California
Thursday, January 29, 2009

Reporter's Transcript Of Proceedings

Appearances:

For Plaintiff:  Hausfeld, LLP
44 Montgomery Street, Suite 3400
San Francisco, California  94104
By:  **Michael Hausfeld, Esquire**
**Christopher Lebsock, Esquire**
**Michael Lehmann, Esquire**
**Andrea Hertzfeld, Esquire**

Cotchett, Pitre & McCarthy
840 Malcolm Road
Burlingame, California  94010
By:  **Steven N. Williams, Esquire**

Cohen Milstein
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C.  20005
By:  **Patrick Tillou, Esquire**

For Defendant:  No Appearance

Reported By:  *Sahar McVickar, RPR, CSR No. 12963*
*Official Reporter, U.S. District Court*
*For the Northern District of California*

(Computerized Transcription By Eclipse)

an enormous expertise and then experience in dealing with the case, and brought all that to the table to resolve the case, and then in come four other lawyers and say to me, well, Judge, we think we ought to be added on. I thought, well, why?

So could you sort of answer that question, why?

MR. TILLOU: I have two points, Your Honor.

First is that I have nothing negative to say about the work done in this case. I agree with your commendation.

THE COURT: Actually, you don't know anything about this case, do you?

MR. TILLOU: I've read the papers.

THE COURT: Well, I did too, but some people may say I didn't know anything about the case.

Be that as it may, you did not work on it.

MR. TILLOU: I did not work on the case.

THE COURT: Okay, all right, well I did.

Okay, go ahead.

MR. TILLOU: First, the Passenger case is now heading -- the next major obstacle in the Passenger case is the appeal in front of the Ninth Circuit. And our firm has a significant amount of appellate experience. And from my days in the Defense Bar, it's not unusual to bring in another firm.

THE COURT: No, except that, of course, they won. I mean, it would be very interesting -- I mean, I have seen firms switch all the time and they lose. The clients say, you know,